(94 Misc. Rep. 388)

FLOOD ABATEMENT COMMISSION OF OLEAN v. MERRITT et al.

(Supreme Court, Special Term, Cattaraugus County.   March, 1916.)

1. EMINENT DOMAIN ⬁195—PLEADING—PROOF OF CAPACITY TO INSTITUTE PROCEEDINGS.

As Code Civ. Proc. § 3365, permits a landowner in condemnation proceedings to deny any material allegation in the petition, Code Civ. Proc. § 1776, providing that a mere denial of the allegation in the petition does not require a corporation to prove its corporate existence, does not apply to an answer in condemnation proceedings.   Where the answer denied an allegation in the petition that the plaintiff was a corporation organized under Laws 1915, c. 717, providing for the appointment and qualification of the flood abatement commission of Olean, and that it shall constitute a body corporate, without an affirmative allegation that the plaintiff is not such corporation, the plaintiff must prove its corporate existence.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 524; Dec. Dig. ⬁195.]

2. EMINENT DOMAIN ⬁195—PLEADING—INABILITY TO AGREE WITH PROPERTY OWNERS.

Under the condemnation law, where an allegation in the petition that the plaintiff has been unable to agree with the owners of the property for its purchase, and the reasons for such inability, is denied, it must be proved on the trial.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 524; Dec. Dig. ⬁195.]

3. EMINENT DOMAIN ⬁191(3)—PLEADING—SHOWING PUBLIC PURPOSE AND NECESSITY.

Under Code Civ. Proc. § 3360, subd. 3, requiring the petition in condemnation proceedings to state the public use for which property is required and the facts showing the necessity of its acquisition, a petition in condemnation proceedings under Laws 1915, c. 717, concerning flood abatement, which stated that the public use for which defendant's premises were required was the opening of the channel of the Allegany river, drainage of lowlands, the erection and maintenance of dikes, retaining walls, excavations of earth, and all necessary purposes, for carrying out of the provisions of the statute for straightening, dredging, and making of the improvements, and restraining the waters of the Allegany river and Olean creek within the limits of the city of Olean, the acquisition by the city of necessary property, the disposition of reclaimed and other lands derived from the making of such improvements, and that the route on defendant's premises was the only proper and feasible one for the carrying out of these improvements, was insufficient compliance with the statute, since it did not state definitely the public use for which the property was required, and was incomplete in not stating facts showing the necessity of requiring defendant's land.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 512; Dec. Dig. ⬁191(3).]

4. EMINENT DOMAIN ⬁191(1)—PETITION—LANGUAGE OF STATUTE.

A petition which alleges in the language of the statute that all preliminary steps required by law to entitle the plaintiff to institute proceedings under Laws 1915, c. 717, concerning flood abatement, have been taken, although it is a statement of a conclusion to be drawn from many facts, is sufficient.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 509, 510, 518; Dec. Dig. ⬁191(1).]

5. EMINENT DOMAIN ⬁195—PLEADING—EFFECT OF GENERAL DENIAL.

In condemnation proceedings under Laws 1915, c. 717, concerning flood abatements in the city of Olean, a general denial by the defendant of a

general allegation in the petition that all preliminary steps have been taken to entitle the plaintiff to institute these proceedings will compel the plaintiff to prove every essential condition prescribed by the statute.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 524; Dec. Dig. ☜195.]

6. STATUTES ☜106(2)—PRIVATE BILL EXPRESSING MORE THAN ONE SUBJECT.

Laws 1915, c. 717, entitled "An act to provide for the straightening, dredging, and making of other improvements to restrain and control the waters of the Allegany river and Olean creek within the corporate limits of the city of Olean, the acquisition by the city of Olean of such lands and property as may be necessary for such purposes, the use and disposition by the city of reclaimed and other lands derived from the making of such improvements or acquired for such purposes, the apportionment of the cost of such improvement between the state and such city, and making an appropriation therefor," is not violative of Const. art. 3, § 16, in that it is a local and private bill embracing more than one subject, and that the subjects are not expressed in the title, since the subject of the bill is the control and restraint of the waters of the Allegany river and Olean creek in the city of Olean by acquiring lands for such purpose, and the way and manner in which such subject is to be treated, handled, and made effective, and all of its provisions are germane to and for the sole purpose of carrying out the object of the bill as expressed in the title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 120; Dec. Dig. ☜106(2).]

7. STATUTES ☜97(3)—LOCAL LEGISLATION—FLOOD ABATEMENT—DRAINAGE OF LOWLANDS.

Laws 1915, c. 717, is not violative of Const. art. 3, § 18, as a local law for the drainage of lowlands, as the object of the act is to preserve the public health and property by preventing floods, and the fact that some lowlands will be drained by the improvements is an incidental result.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 109; Dec. Dig. ☜97(3).]

8. STATUTES ☜80(1)—PRIVATE LAWS—CREATION OF CORPORATION FOR OTHER THAN MUNICIPAL PURPOSES.

Laws 1915, c. 717, is not violative of the Constitution, as a private act creating a corporation not formed for municipal purposes, as the object and purpose of the act is to protect the public health and property of the municipality, and any protection afforded to private property is indirect, and does not affect the municipal purpose expressed and defined.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 86; Cent. Dig. ☜80(1).]

9. MUNICIPAL CORPORATIONS ☜870 — INDEBTEDNESS — FLOOD ABATEMENT — CONSTITUTIONAL PROVISIONS.

Laws 1915, c. 717, is not violative of Const. art. 8, § 10, prohibiting any city from incurring any indebtedness except for city purposes, in that it provides for the drainage of lowland owned by individuals and not by the city, and that the expense thereof is to be met by a general tax, since the purpose of the act is to protect public health and property by the abatement of floods, and not the incidental drainage of lowlands, or to secure the benefits likely to accrue to individuals.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1817; Dec. Dig. ☜870.]

10. CONSTITUTIONAL LAW ☜280—DUE PROCESS OF LAW—EXERCISE OF POWER OF EMINENT DOMAIN.

Laws 1915, c. 717, is not violative of the Fourteenth Amendment of the federal Constitution, prohibiting a state from depriving any person of his property without due process of law, in that it provides for taking taxpayer's property for the private purpose of improving lowlands of individuals by drainage, and that the taxation therein provided for is for pri-

vate purposes, as the purpose of the act is the protection of public health and property and the abatement of floods, and the benefits likely to accrue to private property by the completed improvements are incidental, and do not in any way affect the public purpose or object.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 877–890; Dec. Dig. ⚮280.]

**11. STATES ⚮119—GIFT OF PUBLIC FUNDS—FLOOD ABATEMENT—CONSTITUTIONAL PROVISIONS.**

Laws 1915, c. 717, is not violative of Const. art. 8, § 9, in that it gives money of the state to the city of Olean for a private undertaking, as the control of flood waters is a public purpose, notwithstanding the incidental benefit to private interest.

[Ed. Note.—For other cases, see States, Cent. Dig. § 118; Dec. Dig. ⚮119.]

**12. MUNICIPAL CORPORATIONS ⚮870—FLOOD ABATEMENT—STATUTES—CONSTITUTIONAL PROVISIONS.**

Laws 1915, c. 717, is not violative of Const. art. 8, § 10, in that under the act any judgment recovered against the flood abatement commission, the people of the state, or any employé thereof, growing out of the performance of their duty under the act, may be enforced against the city of Olean, thus making a taxpayer's property liable for the acts of persons over whom the city has no control, as persons performing duties under the act are agents of the city and authorized by the taxpayers when they adopted the act.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1817; Dec. Dig. ⚮870.]

**13. EMINENT DOMAIN ⚮171—FLOOD ABATEMENT—ISSUES IN CONDEMNATION PROCEEDINGS.**

Where the majority of the taxpayers voted in favor of the proposition presented by Laws 1915, c. 717, on a special form of ballot provided for in the act, the necessity of compliance with General Municipal Law, § 6, providing that a resolution proposing a funded debt approved by the taxpayers of a city will provide for raising annually by tax a sum sufficient to pay the interest and the principal as the same shall become due, could not be raised in a condemnation proceeding under the act, where the validity of the bonds issued pursuant to such vote was not a subject of inquiry.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 468, 469; Dec. Dig. ⚮171.]

**14. MUNICIPAL CORPORATIONS ⚮918(1)—FLOOD ABATEMENT—VALIDITY OF BONDS.**

Where the adoption of Laws 1915, c. 717, was by a majority of the taxpayers on a ballot provided for in the act, and the act among its provisions provided for the issuance of bonds and the raising by taxation of money to pay the principal and interest on same, the validity of the bonds issued under the act is not affected by the omission from the ballot of General Municipal Law (Consol. Laws, c. 24) § 6.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1919; Dec. Dig. ⚮918(1).]

Petition by the Flood Abatement Commission of Olean to acquire the lands of Onslow M. Merritt and others by condemnation. Petition dismissed.

John K. Ward, of Olean, for plaintiff.
Henry Donnelly, of Olean, for defendants.

BROWN, J. Upon presentation of plaintiff's petition asking for a judgment of condemnation of defendants' premises for flood abate-

ment purposes, and the appointment of commissioners to ascertain what compensation should be paid defendants for the taking of said lands, the defendants filed many objections to the constitutionality of the act of the Legislature authorizing such proceedings, and by stipulation in open court it was agreed that such objections should be disposed of upon the trial of the issues to be raised by defendants' answer. Whereupon defendants answered, denying all the allegations of the petition, and alleging as a defense all of the matters set forth in the objections theretofore filed.

The question presented is whether the plaintiff, under the law and upon the facts, has established the right to a judgment that the condemnation of the real property of the defendant is necessary for the public use, and that the plaintiff is entitled to take and hold the property for the public use specified upon making compensation therefor. The legality of every step taken by the plaintiff to take possession of defendants' lands is seriously challenged, necessitating a careful examination of both law and facts.

[1] The petition alleges that the plaintiff is a domestic corporation, duly organized and constituted pursuant to chapter 717 of the Laws of 1915. The answer denies such allegation, and does not contain an affirmative allegation that plaintiff is not such a corporation. Plaintiff contends that by virtue of section 1776 of the Code of Civil Procedure the mere denial of the allegation in the petition does not require it to prove its corporate existence. Inasmuch as section 3365 of the Code of Civil Procedure permits a landowner in condemnation proceedings to deny any material allegation of the petition, it was held by the First Department, in the Matter of Broadway & Seventh Ave. R. R., 73 Hun, 7, 25 N. Y. Supp. 1080, that such a denial was sufficient to require proof of the fact of the legal incorporation; that section 1776 of the Code of Civil Procedure did not apply to an answer in condemnation proceedings. In Long Island R. R. v. Jones, 151 App. Div. 407, 135 N. Y. Supp. 954, it was held by the Second Department that section 1776 of the Code of Civil Procedure did apply to pleadings in condemnation proceedings. Each of these cases involved the precise question here presented. Both decisions cannot be right. Under the decision of the Appellate Division of the Second Department the plaintiff was not compelled to prove its corporate existence, while under the decision of the same court in the First Department it was obliged to prove its corporate existence. It is not known how the Court of Appeals may decide this disputed question when it is called upon for a decision. It would be unfortunate to have the validity of these proceedings impeached for the failure of the plaintiff to prove its corporate existence, when such an objection can be easily overcome by presenting such proof. Many facts were proved that constitute partial proof of such incorporation; some facts were not proved that appear to be essential to meet the objection.

Chapter 717 of the Laws of 1915 provides that the mayor of the city of Olean, within 30 days after the passage of the act, shall nominate and by and with the consent of the common council of said city appoint five suitable and proper persons, who shall be residents of

and freeholders within the city, to be commissioners, etc., each of whom, before entering upon the duties of his said office, shall take and subscribe the oath of office and file the same in the office of the city clerk, and shall make and deliver his bond, which is specifically described, and also providing for the qualifying conditions to be complied with. The act also provides that:

"The several persons so appointed and qualified, and their successors in office, are hereby constituted a body corporate by the name of the flood abatement commission of Olean, and by that name may sue, be sued and have and adopt a corporate seal."

It is thus seen that the plaintiff is not a corporation unless all the qualifying conditions enumerated by the statute were exactly complied with. The performance of those conditions were not proved on the trial. In view of the conflicting decisions of the Appellate Division above referred to, the plaintiff is called upon to prove that it is a corporation.

[2] The petition alleges that the plaintiff has been unable to agree with the owners of the property for its purchase and the reasons of such inability. The answer denies such allegation. It was held in City of Syracuse v. Benedict, 86 Hun, 343, 33 N. Y. Supp. 944, that under the condemnation law this allegation must be proved on the trial. Such allegation was not proved; the requirement should be complied with.

[3] The petition states that:

"The public uses for which defendants' premises are required are as follows: The opening of the channel for the passage of the Allegany river, the drainage of lowlands, the erection and maintenance of dikes, retaining walls, and berms, the excavation of earth, the disposition of spoil, and all necessary and proper purposes for the complete carrying out of the provisions of the statute for the straightening, dredging, and making of the improvements to restrain and control the waters of the Allegany river and Olean creek within the corporate limits of the city of Olean, the acquisition by the city of Olean of such lands and property as may be necessary for such purposes, the use and disposition by said city of reclaimed and other lands derived from the making of such improvements or acquired for such purposes, and that the route on said premises is the only proper and feasible one for the carrying out of said improvements; that no other route is proper and advisable therefor."

The answer denies this allegation. Subdivision 3 of section 3360 of the Code of Civil Procedure requires that the petition must state the public use for which the property is required and a concise statement of the facts showing the necessity of its acquisition for such use. It is doubtful whether the foregoing statement in the petition complies with the statutory requirement. The control of the waters of the river and creek within the city of Olean may or may not be a public use. If it is designed to control the waters so as to prevent a flood, and its inferential damage to the streets, highways, public property, or public rights and easements, that is one thing—a public purpose. If it is designed to control the waters so as to prevent injury to lands of individuals lying adjacent to the river and creek, that is another thing—a private purpose. If it is designed to so control the waters to prevent flood and the usual incidental deposit of filth and dangerous substances on lands in the city injurious to health, and

thus conserve and protect the public health, that would be a public purpose and use. While it may be inferred that the public use for which defendants' property is required is the abatement of floods dangerous to public health and property, such does not seem to be the reading of the statement above quoted.

It is difficult to find in the petition any allegation that there are any dangers to public health or property from floods that need abating, or that are to be abated, by taking defendants' lands. The reference to the route on defendants' land is indefinite. If it is to be deemed as a statement that the only practicable plan for a dike designed to keep the flood waters of the Allegany river away from the public streets and property in the city, as determined by the superintendent of public works, is across defendants' lands, it certainly is incomplete. If it had so stated there would have been a concise statement of facts showing the necessity of acquiring defendants' land for a public use. It may be that the language of the petition could be held to allege that the proper and necessary plans, specifications, maps, and surveys have been made for the erection of dikes to control the waters of Allegany river and Olean creek within the city of Olean for the necessary and public purpose of retaining the flood waters of the river and creek within suitable channels, and keep the same, with the filth and dangerous substances thereof—dangerous to public health—off the streets and highways of the municipality, and that the necessary means of such control consist of building a dike upon defendants' land, as shown upon the map or plans of defendants' lands attached to the petition. Such a holding, however, involves so many doubtful inferences and such a strained construction of the pleadings, that the apparent peril of a contrary holding ought to be avoided by a suitable amendment of the petition. City of Syracuse v. Stacey, 86 Hun, 441, 33 N. Y. Supp. 929.

[4, 5] The petition alleges that all the preliminary steps required by law have been taken to entitle the plaintiff to institute these proceedings. The allegation of the petition is in the language of the statute, and while it is a statement of a conclusion to be drawn from many facts, yet the pleader had a right to adopt the language of the statute, and if a single step has been omitted the defendant can deny the general allegation, and then compel the plaintiff to make proof of performance of every essential condition. Rochester R. R. v. Robinson, 133 N. Y. 242, 30 N. E. 1008. The denial of the defendants compelled the plaintiff to prove performance of every essential condition prescribed by chapter 717 of the Laws of 1915 to entitle plaintiff to condemn defendants' land. The plaintiff did prove many things on the trial; it did not prove plaintiff's corporate capacity; it did not prove that the three aldermen who conducted the special election of taxpayers held June 18, 1915, were appointed by the mayor for that purpose; it did not prove that the city clerk gave at least two weeks' notice of such special meeting, by publishing and posting such notice; it did not prove that the plans and specifications were prepared or approved by the superintendent of public works; it did not prove that plaintiff had been unable to purchase the defendants' premises and

the reason for such inability. Those important facts are essential conditions and preliminary steps to be performed and taken in order to entitle plaintiff to condemn plaintiffs' land.

[6] The answer alleges that chapter 717 of the Laws of 1915 is in violation of section 16 of article 3 of the Constitution, in that it is a local and private bill embracing more than one subject, and that the subjects are not expressed in the title. The title is:

"An act to provide for the straightening, dredging and making of other improvements to restrain and control the waters of the Allegany river and Olean creek within the corporate limits of the city of Olean; the acquisition by the city of Olean of such lands and property as may be necessary for such purposes; the use and disposition by said city of reclaimed and other lands derived from the making of such improvements or acquired for such purposes; the apportionment of the cost for such improvements between the state and said city, and making an appropriation therefor."

The subject as thus expressed in the title is the control and restraint of the waters of Allegany river and Olean creek in the city of Olean by acquiring lands for such purpose and doing work. The bill provides the way and manner such subject is to be treated, handled, and made effective. There does not appear to be any provision in the bill that is not directly connected with the subject expressed in the title. The duties of the superintendent of public works are to cause the work to be done. The creation, in the act, of the flood abatement commission as a corporation to acquire lands by purchase or condemnation for the city of Olean, defining the status of the corporation as the agent of the city, prescribing in extended detail its powers, giving such corporation power to borrow money upon the credit of the city when the taxpayers have voted therefor, simply specifies how the subject of acquiring lands, as expressed in the title, shall be executed; and it all is embraced in the title. All the various steps to be taken, as specified in the act itself, are germane to and connected with the one subject expressed in the title. With the extended title given covering one subject in such a general manner, it is very difficult to see how any citizen could be deceived by finding any one of the various provisions in the bill. To say that the act is void because it organizes a corporation and no mention of that subject is contained in the title overlooks the controlling fact that the corporation is created for the sole purpose and as a means of acquiring lands by the city for the purpose of controlling the waters of the Allegany river, as expressed in the title; it is all germane to the one subject. The holding must be that the act in question does not violate section 16 of article 3 of the Constitution. Coxe v. State, 144 N. Y. 396, 39 N. E. 400; Economic P. & C. Co. v. City of Buffalo, 195 N. Y. 286, 88 N. E. 389.

[7] The answer alleges that chapter 717 of the Laws of 1915 is void as being within the prohibition of section 18 of article 3 of the Constitution, in that it is a local law for the drainage of lowlands. While it may be true that some lowlands may be drained by the completed improvements authorized by the act, yet such is not the purpose of the act. In the making of the improvements authorized for the purpose of controlling the river and relieving the high-water con-

ditions dangerous to public health and property, all lands remaining after the completion of the work belong to the city and may be used for park or other purposes. This legislation is far different from an act for draining lowlands. It is the passing of private bills for the draining of lowlands that is condemned. The act in question is not for draining lowlands. It is an act to preserve the public health and property by preventing floods; and for this reason it is not void.

[8] The answer alleges that chapter 717 of the Laws of 1915 is void, in that it is a private act creating a corporation not formed for municipal purposes. The flood abatement commission of Olean is formed as a corporation by the act. The duties and powers of the corporation are specifically fixed and determined; every function of the corporation relates to the municipality; there is no purpose specified in the act that the corporation is to fulfill, except a municipal one; its very object is to provide means whereby the city of Olean may acquire and pay for real property for protecting public health and the property of the municipality. While the corporation, in protecting the municipality, may also indirectly afford protection to private property, it cannot be said that the purpose of its organization is different than expressed and defined by statute, and that is a municipal purpose. The act is not void for this reason.

[9, 10] The answer alleges that chapter 717 of the Laws of 1915 is in violation of section 10 of article 8 of the Constitution, prohibiting any city from incurring any indebtedness except for city purposes, in that it provides for the drainage of lowlands owned by individuals and not by the city, and that the expense thereof is to be met by a general tax upon all taxable property in the city. It is also alleged that said chapter 717 of the Laws of 1915 is in violation of the Fourteenth Amendment of the federal Constitution, prohibiting a state from depriving any person of his property without due process of law, in that it provides for taking taxpayers' property for the private purpose of improving lowlands of individuals by draining the same, and the taxation therein provided for is for a private purpose. A careful search through the act does not reveal any provision for draining lowlands. Defendants are mistaken in this allegation. The purpose of the act is expressed in the first section to be certain improvements—

"in such a manner as will relieve the high-water conditions at and near such city and to protect and conserve the public health and prevent the deposit of filthy and dangerous substances on the lands in said city and prevent loss, injury or damages to property situated within said city."

It may be true that in carrying out the purpose of the act private property may be protected and benefited; it is equally true that public or city purposes are expressed as the reason for the incurring of the indebtedness. It is believed that in order to be within the prohibition of this section of the Constitution the legislation must by fair inference be clearly intended to create an indebtedness for some purpose other than a city purpose. There is no expressed legislative intention of making the improvements for any but city purposes. While it is undoubtedly true that the effective abatement of the floods by the complete improvements contemplated will incidentally be of great

benefit to and serve the interests of private owners of real estate, numerous individual owners of homes and household effects, and be greatly productive of conveniences and comforts of purely a private nature, that could not be considered a city or public purpose or object, yet it is equally true that in many ways the city or public purpose can only be achieved by such abatement.

To secure these incidental benefits likely to accrue to individuals is not stated in the act to be its object and purpose. Within the flooded area, as demonstrated by the flood of 1913, there are more than 50 separate streets and highways partly or wholly affected. Annually the majority of these streets are flooded. In times of high floods they are impassable. It is a statutory duty resting upon a municipality to keep its streets and highways in a reasonably safe condition. It is a city purpose to keep its sewers and street gutters, its fire hydrants, water lines, and street lamps in usable condition and repair. The public have a right to be afforded by a municipality a comfortable, reasonable, and usable highway. Cities for generations have taxed all their inhabitants for highway purposes. It is as much a city purpose to erect a dam or dike to prevent flood waters from destroying the use of city streets, highways, sewers, gutters, fire hydrants, water lines, and street lamps as it is to protect them from destruction from any other cause. The act specifies one of its purposes to be to prevent loss, injury, or damage to property within the city. The city's highways, streets, sewers, fire hydrants, water lines, and street lamps are all property; they are municipal property, and the purpose of preventing damage to any of them is a public or municipal purpose.

If the Constitution forbids the enactment of a law to prevent damage to private property at public expense, and an act is passed with the expressed purpose of preventing damage to property, and it appears that there is great danger to public property, why should it not be held that the act is designed to prevent damage to public property? Why is it necessary to read the purpose of the act as being to prevent damage to private property, when it reads damage to property, for the sole object of holding that the act is unconstitutional? Is it not reasonable to hold that the Legislature intended that the purpose of the act was to prevent danger to public property? When by a reasonable reading of an act of the Legislature it appears to be constitutional, is it not the duty of the court to so read and hold? Would it be reasonable to insert the word "private" before the word "property," and thus decide that the purpose of the act was a private one, and hence unconstitutional, in the face of the expressed intent and purpose of the act as being to improve the river and creek in such manner as will relieve the high-water conditions, to protect and conserve the public health and prevent the deposit of filthy and dangerous substances, etc.?

The finding must be that the act does not violate the provisions of section 10 of article 8 of the Constitution, or the Fourteenth Amendment of the federal Constitution.

[11] The answer alleges that chapter 717 of the Laws of 1915 is in violation of section 9 of article 8 of the Constitution, in that it gives

money of the state to the city of Olean for a private undertaking. The act does provide that the state shall pay one-half of the expense of making the contemplated improvements. Inasmuch as it must be held that the control of the flood waters is for the public purposes hereinbefore referred to, it necessarily follows that state moneys are not given for a private undertaking, notwithstanding that as an incident to such undertaking private interests may be benefited.

[12] The answer alleges that chapter 717 of the Laws of 1915 is in violation of section 10 of article 8 of the Constitution in that by the terms of the act any judgment recovered against the people of the state or any employé thereof, or against the flood abatement commission of Olean, or either of them, personally, growing out of the performance of their duties under the act, shall not be judgments against them personally, but may be enforced against the city of Olean as if said judgments had been recovered against it, thus making the taxpayers' property liable for the acts of persons over whom the city has no control. The statutory liability thus created is but another way of expressing the liability of a principal for the acts of an agent performed within the scope of his authority. The members of the flood abatement commission were appointed by the city; their duties and the manner of performance, as well as those of the state officers, were authorized and fixed by the taxpayers of the city when they adopted the proposition to raise by tax the sum of $150,000 for the purposes of flood abatement as set forth in the act. Every act of the state officers and the members of the flood abatement commission, within their duties, is for the benefit of the city, and those acts are performed at the request of the taxpayers, as expressed in the adopted proposition. Why should not the city be liable for any official act of its agents, the same as any other principal? The act is not invalid for this reason.

[13] The answer alleges that the special election, held June 18, 1915, for the taxpayers to vote upon the proposition, "shall the sum of one hundred and fifty thousand dollars be raised by tax upon the taxable property of the city of Olean for the purposes of flood abatement, as set forth in chapter 717 of the Laws of 1915?" was ineffective to authorize the issuing of bonds of the city, for the reason that section 6 of the Municipal Law (Consol. Laws 1909, c. 24) provides that a resolution proposing a funded debt approved by the taxpayers of the city "shall provide for raising annually by tax a sum sufficient to pay the interest and the principal as the same shall become due." It is provided by chapter 717 of the Laws of 1915 that the plaintiff and superintendent of public works shall not—

"proceed with their duties under that act except to qualify, * * * unless or until a majority of the qualified * * * taxpayers voting on such proposition at a special meeting held as provided in this act shall vote in favor of said proposition."

Chapter 717 of the Laws of 1915 provided that the ballot to be voted by the taxpayers should read as above quoted. It is therefore seen that the plaintiff has the power and authority to maintain these proceedings, provided a majority of the taxpayers have voted in

favor of the proposition; and such power is not dependent upon the proposition to be voted upon containing the above-quoted provision of section 6 of the Municipal Law. The necessity of the compliance with the provision of section 6 of the Municipal Law does not seem to be pertinent to the issues herein; such necessity could be urged only in some proceeding where the validity of the bonds issued pursuant to such taxpayers' vote was the subject of the inquiry. Lyon v. City of Binghamton, 160 App. Div. 222, 145 N. Y. Supp. 424.

[14] Assuming, however, that the validity of the bonds issued by the plaintiff under the authority of chapter 717 of the Laws of 1915 is at issue in this case, it is not believed that their validity can be questioned on account of the omission from the ballot as voted at the special election of the taxpayers of the city of Olean of the provisions of section 6 of the Municipal Law relative to the annual tax to pay interest and principal of the bonded debt. The vital necessity of the provisions of section 6 of the Municipal Law being included in the proposition to be voted upon by the taxpayers is that the taxpayer, when he votes to create a funded debt, must provide the means for the payment of the debt and interest. The mere creation of a debt by a taxpayers' vote, without a provision for its payment by taxation, would give no power to the taxation officers to raise money by that method to pay the debt, and would not constitute a valid municipal liability, for the payment of which the taxpayers' property would be liable. Lyon v. City of Binghamton, supra; Village of Bronxville v. Seymour, 122 App. Div. 377, 106 N. Y. Supp. 834.

When the taxpayers of the city of Olean voted for the proposition submitted to them, they voted to raise the money by tax upon the taxable property for the purposes of flood abatement, as set forth in chapter 717 of the Laws of 1915. By that chapter it is provided, and the taxpayers by voting for such proposition voted, that the moneys thus voted to be raised by taxation should be used to pay bonds to be issued by the plaintiff in the name of the city, the principal to be paid in not less than 20 years and not more than 40 years in installments each year, as the plaintiff should deem best, and the interest to be paid semiannually, the principal and interest to be a city liability, and that the common council should have power to provide for the payment of principal and interest of such bonded debt by including in the annual tax levy and causing to be levied and collected each year such a sum of money as would pay said obligation.

The ballot provided by statute and used by the taxpaying voters of the city was, in effect: Shall the sum of $150,000 be raised by tax upon the taxable property of the city of Olean, as set forth in chapter 717 of the Laws of 1915, for the purpose of flood abatement? It is seen that the precise way and manner of raising the sum is set forth in the act, and the purpose and object of the requirement of section 6 of the Municipal Law were fully complied with. In Village of Bronxville v. Seymour, supra, the proposition voted on by the taxpayers was to pave a street and pay for it by borrowing money on bonds and "a sum to be raised annually by laying a tax on all taxable property in said village sufficient to pay the interest and principal of

all said bonds as the same become due." The proposition was silent as to the maturity of the bonds, simply specifying the total amount. It was held that section 6 of the Municipal Law did not impair the validity of such bonds. In Lyon v. Binghamton, supra, the ballot made no reference whatever to any tax upon the taxable property and no provision of any resolution or statute applicable to the election provided for any tax, annual or otherwise, to pay the bonds. The question submitted was solely "For the issue of bonds in the amount of [stating the amount] for the purpose of [stating the purpose]." Page 2020, Laws 1907. It was there held that, the bonds not being a lien upon the city property by any statute or vote, they were invalid; that the common council had no power to add the necessary amount to the annual tax budget to pay the principal and interest coming due in any year, that the city charter gave no such power, and that the taxpayers had not so determined.

In the case at bar the taxpayers have complied with the precise requirement of section 6 of the Municipal Law, and the bonds of the city issued by the plaintiff are not affected by the omission from the ballot of the language of that section.

For the defects in the proofs and petition, the plaintiff must submit to a nonsuit, and the petition will be dismissed. Ordered accordingly.