OPINION OF THE COURT
Joseph Harris, J.
The subject of this action is the annual-occurring State budgetary practice generally referred to as "member-items.” Specifically this is an action for a declaratory judgment challenging the constitutionality of a certain $48 million *743 appropriation contained in chapter 53 of the Laws of 1992 and reappropriated by chapter 53 of the Laws of 1993, as well as a similar new appropriation made by chapter 53 of the Laws of 1993.
Plaintiffs contend that the ”$48 million lump-sum 'member-item’ ” appropriations contravene the New York Constitution by violating the doctrine of "separation of powers” in that "the Legislature cannot reserve for itself executive decisions on how to allocate appropriations.” In addition, plaintiffs argue that "this lump-sum appropriation violates the [State] constitutional requirement that any spending items added [by the Legislature] to the budget must be stated separately and distinctly and refer to a single object or purpose.” Plaintiffs further claim that certain items of appropriation in the 1993-1994 Aid to Localities budget violate either section 8, article VII of the New York State Constitution, or section 1, article VIII of said Constitution, prohibiting respectively the gift or loan of money or property of the State or local governmental entities to aid individuals, private corporations or associations, or private undertakings.
MEMBER-ITEMS AND THE DOCTRINE OF SEPARATION OF POWERS
The appropriation challenged as violating the doctrine of separation of powers reads as follows:
"AID TO LOCALITIES — MISCELLANEOUS 1993-94 * * *
"FINANCIAL AID FOR CERTAIN COMMUNITY AGENCIES
"General Fund — Local Assistance Account
"For services and expenses or for contracts with municipalities and/or private not-for-profit community agencies, to include liabilities incurred prior to April 1, 1993 . . . 48,000,-000” (at 259).
"AID TO LOCALITIES — REAPPROPRIATIONS 1993-94 * * *
"MISCELLANEOUS
"FINANCIAL AID FOR CERTAIN COMMUNITY AGENCIES
"General Fund — Local Assistance Account
"By chapter 53, section 1, of the laws of 1992, as amended by chapter 793, section 6, of the laws of 1992:
*744 "For services and expenses or for contracts with municipalities and/or private not-for-profit community agencies. Funds herein appropriated shall be made available by the director of the budget who may allocate funds to meet liabilities incurred prior to April 1, 1992 . . . $48,000,000 ........(re. $48,000,000)” (at 418).
Plaintiffs argue that because it appears the Legislature will be recommending to the executive (being represented by the Director of the Budget) how the funds being appropriated should be spent, the appropriation violates the Constitution.[1] Plaintiffs’ reliance is on People v Tremaine (252 NY 27 [1929]) (known as Tremaine I). Their reliance is ill-founded, and indeed Tremaine I does not support the position taken by plaintiffs.
It is necessary to understand the history and context of Tremaine I (supra) respecting the budget process in New York. In 1929, Governor Franklin Roosevelt proposed a budget containing several lump-sum appropriations. Each of said appropriations contained a provision authorizing the Governor to approve the segregation (itemization) of those appropriations. This conflicted with the then-existing provisions of section 139 of the State Finance Law which required that in certain cases the chairs of the Senate Finance Committee and the Assembly Ways and Means Committee were required to approve the segregation of lump-sum appropriations.
The Legislature amended the Governor’s budget bills, removing the provisions requiring executive approval of the segregation of the lump-sum appropriations.
The issue in Tremaine I (supra) is succinctly set forth therein as follows and clearly eliminates the issue raised in the instant case: "The Governor refused to approve any of the lump sum items in which the chairmen of the finance committees were to share authority. He thereafter * * * sent to the Legislature two supplemental budget bills, one containing many lump sum appropriations * * * all of which appropriations were restricted to the * * * Governor’s sole power over segregations; and the other bill itemizing and segregating most of the appropriations appearing in lump sum form in the *745 first supplemental bill. The Legislature * * * acted upon this second supplemental bill, approving most of the segregated items therein, but again setting up a few of the departmental appropriations in lump sum form * * * with the intent that segregations were to be approved under section 139 of the State Finance Law * * * [I]n cases of the large lump sum construction items, the Legislature appended to them a segregation clause like the one in section 139, requiring in the same manner all three — the Governor, the Chairman of the Senate Finance Committee and the Chairman of the Assembly Ways and Means Committee — to approve segregations when any part of such moneys was to be used for personal service" (252 NY 27, 36).
The Governor approved the lump-sum appropriations but argued that former section 139 of the State Finance Law was unconstitutional with respect to such appropriations, in addition to arguing that the segregation clauses inserted by the Legislature into the appropriation bills were unconstitutional as well. Litigation then ensued over whether payment under the aforesaid appropriations could be made without the mandated approval of the legislative chairs.
The Court of Appeals held that segregation of lump-sum appropriations was an executive function and that "the Legislature * * * may not engraft executive duties [segregation of lump-sum appropriations] upon a legislative office and thus usurp the executive power by indirection.” (People v Tremaine, 252 NY 27, 43, supra.) The Court concluded: "[i]t follows that so much of the appropriation bills in question as confers powers on the legislative chairmen to approve segregations is unconstitutional and void.” (252 NY 27, 45.)
In Tremaine I (supra) the legislation involved specifically provided the Legislature would have the power to segregate the lump-sum appropriations. In the instant case there is no such legislative direction. In the instant case not only is there no delegation of power to the Legislature, there is an affirmative grant of power to the executive to determine how the $48 million would be awarded. Indeed, the reappropriation legislation specifically provides that the unsegregated funds are to be made available to the Director of the Budget (an executive officer) "who may allocate funds to meet liabilities incurred prior to April 1, 1992.”[2]
*746 Nothing in the instant legislation nor in any now-existing law permits the Legislature to determine how the $48 million should be spent. While it is true that the Legislature as a matter of comity will in fact have input into how the money will be spent, and that the executive may choose to give effect to legislative recommendations, it remains that the extent to which the legislative recommendations are followed is solely in the discretion of the executive.
This does not render the appropriations unconstitutional. Under these appropriations the executive may choose not to give effect to legislative recommendations. Just as the Legislature is without power to force the executive to adopt its recommendations, so the courts are without power to prevent the executive from doing so.[3] Consequently the appropriations involved here do not violate the doctrine of separation of powers.
MEMBER-ITEMS AND ARTICLE VII, § 4 OF THE STATE CONSTITUTION
Plaintiffs allege that the appropriation of $48 million for "services and expenses or for contracts with municipalities and/or private not-for-profit community agencies” added by the Legislature to the Aid to Localities budget bill, violates the requirement of article VII, § 4 of the NY Constitution, that items of appropriation added by the Legislature "refer each to a single object or purpose.” Inasmuch as the appropriation is in fact for the single purpose quoted above, the evil perceived by plaintiffs is that the appropriation is made as a large lump sum without specifying the agencies included.
Once again plaintiffs rely on a Tremaine case, this time People v Tremaine (281 NY 1 [1939]) (known as Tremaine II), and once again their reliance is ill-founded. Tremaine II held only that the "lump-sum” was an improper substitution by the *747 Legislature for the Governor’s itemized appropriations as submitted to the Legislature; nowhere did it discuss the form of proper legislative addition, such as the items challenged here, in the submission back to the Governor.[4]
More recently the Court of Appeals has affirmed that, while "itemization” is required in budget bills, there is no specific standard for such itemization. In Saxton v Carey (44 NY2d 545, 549 [1978]) the Court held that it was not "a proper function of the courts to police the degree of itemization necessary in the State budget.” In analyzing the degree of itemization required in a budget bill submitted by the Governor to the Legislature, the Court concluded that it was simply "whatever degree of itemization is necessary for the Legislature to effectively review that budget.” (Supra, at 550.) The same principle necessarily governs the question, as here, of the degree of itemization required in appropriations added by the Legislature, namely: the degree of itemization required to enable the Governor to perform his complementary review function of exercising a line-item veto.
The Saxton Court quoted at length and with approval Judge Breitel’s dissent in Hidley v Rockefeller (28 NY2d 439, 445 [1971] [decided solely on a question of standing]): "Direct concern with the degree of particularization or subdivision of items lies exclusively with the executive and legislative branches of government simply because they are the sole participants in the negotiation and adoption of an executive budget.”
The appropriations here at issue are ones in which it would have been impracticable and unworkable for the Legislature to provide further detail. The only alternative to the lump-sum appropriation therein would have been to list individually the hundreds of programs of the municipalities and agencies receiving aid under the appropriation.[5]
In summary of the above, a specific level of detail in budget *748 bills cannot be required, not only because of the practical difficulty of articulating such a standard to apply to the variety of appropriations in the budget, but also because the necessary level of detail is self-determined through the implementation of the constitutional budget process. Each of the participants in that process — the executive and the Legislature — impose upon the other the standard of itemization necessary to perform its own constitutional function. This is accomplished through the long series of negotiations which accompany the submission and adoption of the budget, which determines not only the substance but the form in which the Governor’s budget bill is submitted to the Legislature, and the items added by the Legislature are returned to the Governor. Once again, as the Court of Appeals opined in Saxton (supra, at 550): "This [the level and detail of itemization] is a decision which is best left to the Legislature, for it is not something which can be accurately delineated by a court. It is, rather, a function of the political process, and that interplay between the various elected representatives of the people which was certainly envisioned by the draftsmen of the Constitution.”
MEMBER-ITEMS AND THE CONSTITUTIONAL PROHIBITIONS AGAINST THE GIFT OF PUBLIC FUNDS FOR PRIVATE UNDERTAKINGS
Plaintiffs further allege in their complaint that 68 items of appropriation in the 1993-1994 Aid to Localities budget violate either section 8, article VII of the New York Constitution, prohibiting the gift or loan of State credit or money to aid a private corporation or association or private undertaking, or section 1, article VIII of said Constitution, prohibiting the gift or loan of money or property of a county, city, town, village or school district to aid an individual, private corporation or association, or private undertaking.
For over 70 years the Court of Appeals has established the constitutional line with respect to these sections as between gifts and loans to private entities for public purposes and gifts and loans to private entities for private purposes. (See, People v Westchester County Natl. Bank, 231 NY 465 [1921] [involving the question of whether the State had a moral obligation to reward members of the military who had served in World War I. The guiding principle of Westchester County Natl. Bank became the determination of the nature and quantum of State involvement, either through a direct benefit received by the *749 State or due to an injury which the State was obligated to redress].)[6]
Since "[a] determination of public purpose must be made by the courts themselves and they must have a basis on which to do so” (Yonkers Community Dev. Agency v Morris, 37 NY2d, at 485, supra) it is important to assess the purpose for which the challenged items were appropriated.
Sixteen of the challenged items were appropriated to the Department of Economic Development for aid to private, not-for-profit organizations involved in local tourism, small business development and business expansion, as well as for assistance to private small and mid-sized forest industry firms to improve competitiveness and to expand markets. (L 1993, ch 53, at 30, 31.) In Yonkers Community Dev. Agency v Morris (supra), the Court of Appeals found that "economic underdevelopment and stagnation are * * * threats to the public sufficient to make their removal cognizable as a public purpose.” (37 NY2d, at 481.) The mere fact that a profit would be realized by certain forest industry firms as a result of an infusion of public funds for job growth was not critical to the determination of public purpose. (Metropolitan Transp. Auth. v Village of Tuckahoe, supra.) Rather, the dominant benefit to the general public was key to the determination. (Matter of Waldo’s, Inc. v Village of Johnson City, supra.)
Twenty-one of the challenged items were appropriated to the Division for Youth for aid to private, not-for-profit corporations providing educational and recreational programs for young people. (L 1993, ch 53, at 253.) An additional nine items were appropriated to the Natural Heritage Trust for aid to other private, not-for-profit entities providing general educational and recreational programs. (L 1993, ch 53, at 290, 291.) The expenditure of public money for "recreation, entertainment, amusement, education [and] enlightenment” of the *750 public was found by the Court of Appeals in Murphy v Erie County (28 NY2d, at 87, supra) to be for public benefit and purpose.
Eighteen of the challenged items were appropriated to the Natural Heritage Trust for aid to private, not-for-profit corporations which are cultural institutions and museums. (L 1993, ch 53, at 290, 291.) The Court of Appeals in Hotel Dorset Co. v Trust for Cultural Resources (46 NY2d, at 364, supra) noted that such private cultural entities benefit residents and visitors alike, and thus appropriations to them are for a public purpose.
Two of the challenged items were appropriated to the Division of Housing and Community Renewal for neighborhood restoration and resources. (L 1993, ch 53, at 96.) In Yonkers Community Dev. Agency v Morris (37 NY2d, at 481, supra), the Court of Appeals found that urban redevelopment programs, which directly affect the health and welfare of the public, are unquestionable for a public purpose.
The remaining two challenged items were appropriations and reappropriations "for services and expenses or for contracts with municipalities and/or private, not-for-profit community agencies.” (L 1993, ch 53, at 259, 418.) Since such community agencies provide a variety of programs in all the areas discussed supra to the public and since appropriations of public funds to them do not inure to the financial benefit of any private individual, corporation or association, such appropriations are for public benefit and purpose and are not constitutionally infirm.[7]
In addition to the above, while plaintiffs have challenged a number of identified recipients of the alleged unconstitutional appropriations, they have named none of them as parties to this action. These entities have at least a colorable claim to the appropriations; thus they have a right to be heard before the court deprives them of any claim they may have to funds appropriated. In Matter of New York State Assn. of Plumbing-Heating-Cooling Contrs. v Egan (86 AD2d 100, 105, affd on opn below 60 NY2d 882), the Court held that, where a petition seeks to annul the award of a contract to *751 another, then such contractors are necessary parties who must be joined. This is premised on the requirement that notice and the opportunity to be heard are required before one’s rights may be adversely affected (Matter of Martin v Ronan, 47 NY2d 486, 490; compare, Matter of Samuel v Ortiz, 105 AD2d 624; Matter of Smith v Board of Educ., 104 AD2d 445; Matter of Spring v Broadnax, 158 AD2d 242; Matter of Cassidy v New York City Dept. of Correction, 95 AD2d 733). Thus the complaint must be dismissed for failure to join as necessary parties those entities claimed to be the recipients of the alleged unconstitutional disbursements.[8]
CONCLUSIONS
For all the foregoing reasons, the motion by defendants to dismiss the complaint herein is in all respects granted.

. Nothing in the appropriations bill alludes to any such procedure. The basis for plaintiffs’ assertion are certain news stories and a statement by a spokesperson for the Division of the Budget to the effect that the money in the appropriation would not be spent until the Legislature had noted in detail how the money should be allocated.

. Cf., New York Pub. Interest Research Group v Carey, 86 Misc 2d 329, affd 55 AD2d 274.

. Indeed, to hold otherwise would be an unconstitutional usurpation by the courts of executive power. It is the duty of the executive branch of government to segregate lump-sum appropriations by exercising its best judgment. If its best judgment parallels legislative recommendations, it ought to adopt those recommendations; if its best judgment differs from the legislative recommendations, it ought to reject those recommendations, and it is legally free to do so. So long as the executive is legally free to do so, the Constitution is not violated. Whether it is politically free to do so is another matter with which a court may not involve itself. With respect to such considerations, an aggrieved citizen’s sole recourse is to the "fourth branch of government” — the ballot box!

. In fact, Tremaine II (supra) stated expressly that "lump-sum” appropriations might be appropriate in some cases: "we must rely upon the Executive and Legislative branch of the government to provide a budget sufficiently itemized to comply with the spirit and words of the Constitution, and yet containing lump sum appropriations when * * * details and items in a budget would be impracticable or almost impossible — unworkable.” (281 NY2d 1, 12.)

. This would have provided a far greater level of detail than is found in any of the other appropriations in the budget bill (all of which are subject to the same constitutional standard of itemization).

. New York State courts have subsequently determined that appropriations of public funds for athletic facilities (Murphy v Erie County, 28 NY2d 80 [1971]), privately owned railroad passenger stations (Metropolitan Transp. Auth. v Village of Tuckahoe, 67 Misc 2d 895 [Sup Ct, Westchester County 1971], affd without opn 38 AD2d 570 [2d Dept 1972]), urban development projects (Yonkers Community Dev. Agency v Morris, 37 NY2d 478 [1975]), cultural institutions and museums (Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358 [1978]), and infrastructure expansion which benefits private business (Matter of Waldo’s, Inc. v Village of Johnson City, 74 NY2d 718 [1989]) have all been expenditures of public money for public uses which far outweigh any incidental private benefit derived by private individuals, corporations, associations or undertakings.

. Wrote the Attorney-General in a 1980 formal opinion: "In today’s complex, inter-dependent society there are many things that can be more effectively accomplished through controlled assistance to private groups than by direct action by government” (1980 Opns Atty Gen 88, 90). For public funds to assist private entities in the provision of public benefits is both constitutional and fiscally prudent.

. Although the complaint may be dismissed for failure to join necessary parties, and might therefore be considered moot, because of the frequency and importance of the issues raised in this lawsuit, the court has deemed it prudent to reach all the issues herein on the merits.