The Attorney General renders formal opinions only to officers and departments of the State government. This perforce is an informal and unofficial expression of the views of this office.
Paul W. Elkan, Esq. Informal Opinion Town Attorney No. 2002-17 Town of Richfield Box 207 43 Pioneer Street Cooperstown, New York 13326
Dear Mr. Elkan:
You have requested an opinion as to whether the Town of Richfield may contribute to a project to reconstruct a dam owned by a private not-for-profit entity.
Based upon your letter requesting an opinion and a subsequent letter clarifying the proposed funding of the project, we understand the details of the reconstruction project to be as follows: The existing dam is located on Canadarago Lake, of which approximately two-thirds of the shoreline lies within the Town of Richfield. The reconstruction project is proposed to be financed by funds from a number of sources. The Canadarago Lake Association, the not-for-profit entity that owns the dam, would contribute $10,000. The Town of Otsego, one of the two towns other than Richfield within which the lake's shoreline lies, would contribute $12,000. Richfield would contribute $30,000. You have indicated that these funds would be matched by a grant from the state Department of Environmental Conservation, available in an amount up to $78,000. An additional $40,000 is available through a legislative initiative member item from Senator James Seward. You further state in your letter that the goal of the reconstruction project is to facilitate control of the water level of the lake, which currently floods periodically despite the presence of the existing dam.
Pursuant to a telephone conversation, you presented the following additional facts: When the lake floods, the lawns of some of the residences on the lake are flooded. Not all of the homes on the lake are affected, nor are any of the businesses on the lake affected. Property owned by the Town on and near the lake, including a public beach, is not affected by the flooding. When lawns flood, some private septic tanks are also flooded; in the past, when the water receded, some sewage has flowed into the lake. The lake attracts tourists, who come to Richfield to fish on the lake.
In your letter requesting an opinion, you asked about the circumstances under which the towns lying within the shoreline of the lake may contribute funds to the reconstruction project. During a telephone conversation, you clarified that your question was whether the Town of Richfield could, under these circumstances, contribute to the reconstruction project. We conclude that the proposed contribution by the Town under the circumstances as presented may be a permissible expenditure of public funds.
State law generally authorizes a town to contribute public funds to a reconstruction project such as the one you describe. Pursuant to Town Law § 64(11-a),
 [u]pon the adoption of a resolution, the town board . . . may, for the purpose of drainage and to protect the property within the town from floods, freshets, and high waters, construct drains, culverts, ditches, sluices, and other channels for the passage of water, and may deepen, straighten, alter, pipe, or otherwise improve any of the lakes, ponds, streams, ditches, drains, or water courses in any part or section of the town in order to prevent the same from overflowing . . . .
This statute clearly authorizes the expenditure of town funds for the reconstruction of a dam for the purposes of drainage and flood prevention.
This authorization must, however, be read in conjunction with the prohibition on gifts of public property contained in Article VIII, section 1 of the State Constitution, which provides, in relevant part, that
 [n]o county, city, town, village or school district shall give or loan any money or property to or in aid of any individual, or private corporation or association, or private undertaking, or become directly or indirectly the owner of stock in, or bonds of, any private corporation or association; nor shall any county, city, town, village or school district give or loan its credit to or in aid of any individual, or public or private corporation or association, or private undertaking. . . .
An incidental private benefit, however, will not invalidate a project which has as its primary purpose a municipal purpose. See Murphy v. ErieCo., 28 N.Y.2d 80, 88 (1971); see also Op. Atty. Gen. (Inf.) No. 94-35. In the circumstances described, both the non-profit owner of the dam and the individuals living on the shoreline whose property is at times flooded — residents of the Town as well as possibly residents of the neighboring towns — will directly benefit from the Town's proposed contribution.
The question, then, is whether the Town's proposed contribution to reconstruct the dam primarily serves a municipal purpose. A "municipal purpose" has been defined as "something `necessary for the common good and general welfare of the people of the municipality, sanctioned by its citizens [and] public in character.'" Schulz v. Warren Co. Bd. ofSupervisors, 179 A.D.2d 118, 122 (3d Dep't 1992) (quoting Sun Printing Publ'g Ass'n v. Mayor of New York, 152 N.Y. 257 (1897)). A purpose is not public, however, where the public benefit is only incidental to the private benefit. Denihan Enters., Inc. v. O'Dwyer, 302 N.Y. 451, 458
(1951).
We note that prevention of flooding may or may not constitute a public purpose, depending on what consequences of flooding the municipality is attempting to avoid. As the court in Flood Abatement Comm'n of Olean v.Merritt, 94 Misc. 388 (Sup.Ct. 1916), stated:
 The control of the waters . . . may or may not be a public use. If it is designed to control the waters so as to prevent a flood and its inferential damage to the streets, highways, public property or public rights and easements, that is one thing, a public purpose. If it is designed to control the waters so as to prevent injury to lands of individuals lying adjacent to the [water], that is another thing, a private purpose. If it is designed to so control the waters to prevent flood and the usual incidental deposit of filth and dangerous substances on lands in the city injurious to health and thus conserve and protect the public health, that would be a public purpose and use.
Id., at 393-94. While holding that the challenged condemnation petition did not clearly state the public use for which the land at issue was needed, the court in Merritt determined that the statute authorizing condemnation proceedings for flood abatement projects served the valid municipal purposes of protecting public health and municipal property.Id. at 399. Furthermore, the court determined that these municipal purposes could only be achieved through abatement measures that would result in direct private benefits. Id. In so finding, however, the court recognized that although flood abatement would "benefit . . . and serve the interests of private owners of real estate, numerous individual owners of homes and household effects and be greatly productive of conveniences and comforts of purely a private nature, that could not be considered a [municipal] purpose." Id.
The issue of whether flood abatement serves a valid municipal purpose has been addressed more recently in opinions of the Office of the State Comptroller. The State Comptroller has concluded that alleviating flood conditions on private property may serve a public purpose if the project primarily serves to reduce the risk of flooding to the municipality generally; where, however, flooding on private property is caused by a pre-existing condition, only that property is affected, and the flooding is caused by a problem unique to that property, the Comptroller has concluded that municipal funds cannot be used to alleviate the flooding.See Op. St. Compt. No. 89-50 (summarizing prior opinions).
You indicated that when the lake floods onto residents' lawns, some septic tanks also are flooded, and some seepage of sewage into the lake may occur when the waters recede. Because the Town has a public beach on the lake through which all of its residents may access the lake, all of the residents may be affected by this condition. This suggests that protection of the public health may be a purpose to be served by the Town's contribution to the reconstruction project. Protection of the health of a municipality's inhabitants is well-established as a public purpose. See, e.g., In re Application of Ryers, 72 N.Y. 1, 12 (1878) ("That the promotion and preservation of the public health is a public purpose, cannot be doubted."); Flood Abatement Comm'n of Olean v.Merritt, supra. Municipal funding of the privately-owned dam for this purpose, however, would require credible findings by the Town Board that the public health is at risk due to the introduction of sewage into the lake after the lake floods private lawns and that reconstruction of the dam would primarily serve the purpose of protecting the public from this risk.
You have also indicated that a purpose supporting the Town's proposed expenditure is the protection of the lake, an attraction for tourists. Promotion of tourism to a region has been found to be a purpose for which public funds may properly be given to private associations. See Froslidv. Hults, 20 A.D.2d 498 (2d Dep't 1964) (promoting World Fair served public purpose of exhibiting resources and progress of New York and was calculated to benefit entire State; benefit to individuals in increased receipts incidental to primary purpose of promoting public good); Schulzv. New York, 160 Misc.2d 741 (Sup.Ct. 1994) (grant of public funds through lump-sum appropriation to private not-for-profit organization involved in local tourism served public purpose and thus was not unconstitutional gift to private entity). We are unclear, however, as to how the stated purpose of protecting the Town's tourism industry will be served if the Town contributes to the dam reconstruction project. You indicated that the Town's tourism industry relates to fishing on the lake. You further indicated that, while the level of the lake sometimes gets too low, neither the low levels nor the flood conditions affect the fishing industry on the lake. We therefore conclude that, if the Town were to contribute to the dam reconstruction project on the grounds that doing so would protect the Town's tourism industry, the contribution would be an unconstitutional gift of public funds. Thus, we are of the opinion that the promotion of tourism in the Town does not support this expenditure.
You have indicated that another purpose behind the Town's desire to contribute to the reconstruction project is to protect the one-quarter of its assessable real property that lies on the lake's shoreline. You were uncertain of what portion of this was affected by the flooding of the lake, although from the facts presented, it is evident that not all of the property is. In any event, we are of the opinion that protecting one-quarter of the Town's assessable real property from flood damage by contributing to the dam reconstruction project would be an unconstitutional gift of public funds. In Smith v. Smythe, 197 N.Y. 457
(1910), the Court of Appeals indicated that the care and maintenance of private streets within a residential subdivision in which one-third of the village's population resided and more than 40 percent of the total assessed value of real property within the village lay could not be considered a village purpose. Furthermore, if protection of the assessed value of real property within the Town were a valid purpose for spending municipal funds, few, if any, improvements to private property would be unconstitutional gifts. See, e.g., Op. Atty. Gen. (Inf.) No. 99-17 (village re-paving private street or filling in dangerous potholes on same street at request of residents who own street would be unconstitutional gift of public funds or property).
Under the facts you have outlined, we have identified one municipal purpose that may be primarily served by the Town's proposed contribution. We therefore conclude that, under the circumstances presented, and depending on the Town Board's findings regarding the public health risk, the Town's contribution to the project to reconstruct the privately-owned dam may be a permissible expenditure of public funds.
Very truly yours,
KATHRYN SHEINGOLD, Assistant Solicitor General In Charge of Opinions