Abraham J. Gellihobb, J.
Motions numbers 128, 129 and 146 of July 5,1972, are consolidated.
In these article 78 CPLR proceedings, petitioners, various associations of electrical contractors, seek a judgment compelling respondents to comply with section 101 of the General Municipal Law in the awarding of contracts for the construction of the planned Brooklyn Terminal Cooperative Market. Respondents oppose, contending that section 101 is inapplicable to the situation here, and that in any event these petitioners lack standing to sue..
Section 101 of the General Municipal Law provides as follows: “ 1. Every officer, board or agency of a political subdivision or of any district therein, charged with the duty of preparing specifications or awarding or entering into contracts for the erection, construction, reconstruction or alteration of buildings, when the entire cost of such work shall exceed fifty thousand dollars, shall prepare separate specifications for the following three subdivisions of the work to be performed:
“ a. Plumbing and gas fitting;
“ b. Steam heating, hot water heating, ventilating and air conditioning apparatus; and
“ c. Electric wiring and standard illuminating fixtures.
“ 2. Such specifications shall be drawn so as to permit separate and independent bidding upon each of the above three subdivisions of work. All contracts awarded by any political subdivision or by an officer, hoard or agency thereof, or of any *169 district therein, for the erection, construction, reconstruction or alteration of buildings, or any part thereof, shall award the three subdivisions of the above specified work separately in the manner provided by section one hundred three of this chapter. Nothing in this section shall be construed to prevent any political subdivision from performing any such branches of work by or through their regular employees, or in the case of public institutions, by the inmates thereof.”
In the instant case, the City of New York, which is the owner of the subject parcel of land, has entered into a lease with the Brooklyn Terminal Cooperative Market, Inc. The lease provides that the market will build certain buildings on the property for the conduct of its business, and will be reimbursed by the city for the costs of building. All improvements on the property, including all buildings, become the property of the city from their inception. The planning and construction of the buildings are to be under the supervision of the Commissioner of the city’s Department of Ports and Terminals.
Additionally, the lease appears to envision compliance with section 101, since it provides that: ‘ ‘ Lessee shall award a general construction contract within fifteen (15) months from the date Lessee’s contract for architectural services is approved by Lessor. Lessee shall award all electrical, mechanical, sprinkler and heating, ventilating and air conditioning contracts within seventeen (17) months from the date Lessee’s contract for architectural services is approved by Lessor.”
However, the parties to the lease have not interpreted that provision as requiring separate bids and contracts for the various subdivisions of work. Instead, the architect employed by the market has advertised for a single bid for the entire project. Petitioners assert that they are being improperly prevented from bidding for the electrical work, since they, as electrical contractors, are incapable of entering a bid for the entire contract. Accordingly, they have instituted these proceedings to require respondents to employ the fragmented bidding system impelled by section 101.
Respondents contend, in limine, that regardless of the applicability of section 101, these petitioners lack standing to maintain these proceedings. They urge that since the section was enacted “ to protect municipalities and the taxpayers therein, not to benefit or enrich bidders ” (Matter of Allen v. Eberling, 24 A D 2d 594 [2d Dept., 1965]), these petitioners are not aggrieved by any failure to abide by the statute, and therefore lack standing. However, even in the Allen case, the court *170 recognized that, notwithstanding the legislative intent in enacting section 101, “ it is true that an unsuccessful bidder has standing to maintain a proceeding to review the award of a contract in violation of a statute requiring that the contract go to the lowest responsible bidder * * * this procedure is sanctioned merely to ensure enforcement of the statute.”
Inasmuch as unsuccessful bidders have standing, it would in this court’s opinion be illogical to deny standing to one who claims that the violation of the statute prevented him from entering any bid at all. While the purpose of the statute may have been to benefit the taxpayers in its application it also benefits the bidders as well. Under any reasonable definition of “ aggrieved,” petitioners are aggrieved.
Moreover, it has been held that ‘ ‘ the preparation of specifications, advertising for bids and awarding contracts for a public project is a matter of public interest which relieves petitioner of the obligation to show that it is an aggrieved party or that it has any special interest ” (Matter of General Bldg. Contr. of New York State v. County of Oneida, 54 Misc 2d 260, 261; see Matter of Policemen’s Benevolent Assn. of Westchester County v. Board of Trustees of Village of Croton-on-Hudson, 21 A D 2d 693, 694).
Accordingly,- the court concludes that petitioners have standing to maintain this proceeding.
Respondents’ contention that the arrangement here does not fall within the purview of section 101 is also without merit. Although in form the construction is being undertaken by the market, the attending facts conclusively demonstrate that in substance it is a public project. The land belongs to the city; the buildings will belong to the city from the moment a spade touches the earth; the entire project is. subject to the approval and control of the city; and, even though the payments to those constructing the buildings will be made by the market, the market is to be reimbursed by the city on a weekly basis for all such payments.
Respondents, misconceiving the issue, urge that, unlike the “ turnkey ” cases relied upon by petitioners (Matter of North Country Development Corp. v. Massena Housing Auth., 65 Misc 2d 105; Matter of Marino v. Town of Ramapo, 68 Misc 2d 44), the lease agreement here is a genuine bona fide agreement which, under the law, the city was entitled to enter into (Agriculture and Markets Law, § 267; New York City Charter, §§ 1150,1303). That the city may enter into leases for “ wharf property ” does *171 not authorize it to use the lease as a means of avoiding compliance with other provisions of applicable law.
The construction here is in effect an act of the city, regardless of the mechanics or formalities employed. Section 101 of the General Municipal Law must therefore be complied with. The petitions are granted.