AMERICAN INSTITUTE FOR IMPORTED STEEL, INC., et al., Appellants,
v. OFFICE OF GENERAL SERVICES OF THE STATE OF NEW YORK
et al., Respondents.

Third Department, March 6, 1975.

*Graubard, Moskovitz, McGoldrick, Dannett & Horowitz* (*Seymour Graubard* and *Jack Weinberg* of counsel), for appellants.

*Louis J. Lefkowitz, Attorney-General* (*Joseph P. McCale* and *Ruth Kessler Toch* of counsel), for respondents.

SWEENEY, J. This appeal concerns the validity of defendants' "Buy-American" policy as expressed in paragraph 10 of its general specifications. Special Term, in granting defendants' cross motion for summary judgment, determined that defendant Office of General Services of the State of New York (OGS) has the power to promulgate broad rules and standards for the purchase of products for the State on the basis of public policy and its "Buy-American" policy is within its statutory authority. We arrive at a contrary conclusion.

The specification in question provides that "all bids must be on domestic or domestic made commodities unless otherwise specified." Adhering to this provision, OGS refused to place

plaintiff Widder Corporation on its mailing list because of the foreign origin of the products it wished to supply. Thereafter, in conjunction with the other plaintiffs who also engaged in selling foreign imported products, this action for a declaratory judgment was commenced.

OGS derives its authority to let contracts from section 174 of the State Finance Law, the pertinent part of which reads as follows: " Contracts with the commissioner of general services or with a state department or institution, or other agency of a department, shall be let to the lowest responsible bidder, *as will best promote the public interest,* taking into consideration *the reliability of the bidder,* the qualities of the articles proposed to be supplied, their conformity with the specifications, the purposes for which required and the terms of delivery; *provided, however, that no such contract shall be let to a bidder other than the lowest responsible bidder without the written approval of the comptroller."* (Emphasis supplied.)

It is fundamental that defendants' actions and authority are circumscribed by the language of this statute. OGS may not validly adopt a rule or standard which enlarges or alters the powers expressed therein.

The purpose of this statute is to invite competition and thereby furnish the State with the best product at the lowest price practicable. In other words, its purpose is to conserve the taxpayers' money. This beneficial purpose could easily be neutralized if any group of responsible bidders is wrongfully eliminated. In resolving this controversy, we are confronted with the narrow question of whether plaintiffs may be legally prohibited from bidding on State contracts on the sole ground that they propose to supply a nondomestic product.

From an analysis of section 174, the Legislature, in our view, has established five criteria for determining the lowest responsible bidder, i.e., (1) the reliability of the bidder; (2) the quality of the article; (3) the conformity thereof with specifications; (4) the purpose for which it is required; and (5) the terms of delivery. Manifestly, OGS may not add others. Defendants point out, however, that the statute was amended in 1941 by adding certain language (italicized above). They argue that the Legislature, by this amendment, intended that contracts shall be let to the lowest responsible bidder who will promote the public interest, notwithstanding the five criteria set forth in the statute. Specifically, they contend that considerations of public interest, as well as reliability of the bidder, support the adoption of the " Buy-American " specification in that foreign

commodities often present difficulties. We are unable to accept this interpretation. In our opinion, the successful bidder must be the lowest responsible bidder, based on the five criteria expressed in the statute. It is not merely that State contracts shall be let as will best promote the public interest. (*Matter of Margrove, Inc.* v. *Office of Gen. Servs. of State of N. Y.*, 27 A D 2d 321, affd. 19 N Y 2d 901.) Defendants' reasoning, in effect, would add a sixth criteria ánd frustrate the real intent of the Legislature by eliminating completely an entire class of bidders, those who supply foreign made goods. No supplier of foreign products, no matter how responsible or how superior its product at whatever the price offered, would be afforded an opportunity to compete. It may be desirable and beneficial to the national economy to purchase materials which are made in this country, but the Legislature has not so directed. (See *American Inst. for Imported Steel* v. *County of Erie*, 32 A D 2d 231.)

Our conclusion as to the intent and purpose of this statute is bolstered by an examination of the memoranda submitted to the Governor at the time of the 1941 amendment. They clearly demonstráte that the amendment, and particularly the addition of the words to '' best promote the public interest '', was labor-relations oriented. The various memoranda indicate that the purpose of the amendment was to render the statute more flex-ible in order to permit the State to reject a bid submitted by a party, e.g., with bad labor relations which might result in a, strike and consequent delay in the progress of a project. We, therefore, conclude that the specification limiting State con-tracts to bidders supplying domestic products is invalid. We hold further that OGS, in awarding State contracts to the lowest responsible bidder, is restricted in its determination as to which bid will best promote the public interest to a considera-tion of the five criteria expressed in section 174 of the State Finance Law.

The order and judgment should be reversed, on the law, with-out costs, and summary judgment should be granted in favor of plaintiffs declaring that paragraph 10 of the Office of General Services' General Specifications and subdivision 8 of article 5 of State Design and Construction Master Specifications (formerly paragraph 174 of article 35 of the State Architects Standard Specifications of January 2, 1966) are null and void and of no force and effect.

HERLIHY, P. J. (dissenting). Upon this record the sole con-troversy established relates to the failure of the defendants to place the plaintiff, Widder Corporation, upon a mailing list in

regard to the invitation of bids for machine tools. The record contains a letter from the Office of General Services dated May 24, 1973 to the plaintiff, Widder Corporation, which categorically refuses to place its name upon the mailing list for machine tools upon the sole ground that the said appellant's equipment would be of foreign origin.

The present record, as noted hereinabove, establishes that the Widder Corporation was denied placement upon a mailing list solely because the products it would submit in response to an invitation to bid would be foreign made. In this limited regard I agree with the majority that in New York State the Legislature has not provided for the rejection of bids *solely* because of the place of origin of the products to be furnished except when that fact has relevance to section 174 of the State Finance Law in its entirety and, accordingly the refusal of the defendants to treat the Widder Corporation equally with other corporations in regard to the issuance of invitations to bid is arbitrary and capricious.

All of the other general allegations in the plaintiffs' complaint in regard to a refusal of the defendants to accept bids made by suppliers of foreign materials are either denied or not admitted, and the affidavits on behalf of the plaintiffs for summary judgment together with the documentary evidence in the record do not establish that the defendants have failed to permit anyone to bid because the bidder would be supplying foreign made products. The record does not establish that the defendants have rejected any bid made by anyone represented by the plaintiff associations or the Widder Corporation solely because the bid was based upon supplying foreign made products.

The affirmative defenses in the defendants' answer allege, *inter alia,* that the plaintiffs lack standing to maintain the action and that the court lacks jurisdiction of the subject matter.

Among other things, the plaintiffs submitted upon the motion for summary judgment an auditing report undated but, apparently, for the year 1973 which notes that regardless of the apparent restriction contained in the specifications as to foreign made products, the defendants had awarded contracts on various commodities to suppliers where the products were foreign made. It is apparent from the record that the defendants had not interpreted the challenged specifications and/or rules and regulations as prohibiting suppliers of foreign made products from bidding on State contracts even if the bids are based upon such foreign products or as prohibiting an award of a contract based upon such a bid.

It reasonably appears that in the absence of facts which would tend to establish that the defendants would refuse to award bids solely because the goods offered were foreign made, a declaration striking the specifications and/or regulations would be premature. Upon the present record it is established without contradiction that the defendants are not interpreting the subject specifications and/or rules and regulations as prohibiting either bids or the award of contracts where the products involved would be foreign made solely because of the origin of such products. Accordingly, it is apparent that if, in fact, the defendants have failed to award bids to the lowest responsible bidder solely because the goods involved were foreign made, the appropriate remedy would be either an action at law for damages or an article 78 proceeding brought by the particular wronged persons.

However, it is apparent that the appropriate relief for the Widder Corporation would have been by the commencement of an article 78 proceeding in the nature of mandamus to challenge the refusal of the defendants. Upon the present record the refusal of the defendants occurred on May 24, 1973 in the letter of such date and the action herein was not commenced until November 12, 1973, and it does not appear that there have been any such subsequent refusals.

Accordingly, it does not appear that there would be any basis for the entry of declaratory judgment, and the complaint of the Widder Corporation would be untimely if the matter were to be considered as an article 78 proceeding.

For the foregoing reasons the action of Special Term in dismissing the complaint was correct, and the order and judgment should be affirmed.

KANE, MAIN and LARKIN, JJ., concur with SWEENEY, J.; HERLIHY, P. J., dissents and votes to affirm in an opinion.

Order and judgment reversed, on the law, without costs, and summary judgment granted in favor of plaintiffs declaring that paragraph 10 of the Office of General Services' General Specifications and subdivision 8 of article 5 of State Design and Construction Master Specifications (formerly paragraph 174 of article 35 of the State Architects Standard Specifications of January 2, 1966) are null and void and of no force and effect.