Roger J. Miner, J.
Petitioner seeks judgment pursuant to CPLR article 78 declaring void and unenforceable a certain construction contract entered into between respondent Dominick Dan Alonzo, Inc., and the State of New York.
It appears that petitioner is a not-for-profit corporation duly organized under the laws of New York and has a membership comprised of general contractors engaged in public works construction. This proceeding involves its challenge to the award of a public building contract by the State to respondent Alonzo, Inc., without advertising for competitive bidding and without separate bidding categories as required by statute.
The contract in question provides for the performance of *280 certain construction work including the emplacement of security screens at Otisville Training School, a facility of the New York State Department of Correctional Services. The contract was negotiated by respondent Commissioner of General Services upon a declaration of emergency by Correctional Services. It is the duty of the commissioner to prepare drawings and specifications for State agencies in connection with certain construction work. (Public Buildings Law, § 6.) The procedure followed in awarding the contract was as follows: the Office of General Services received the "emergency declaration” on September 27, 1976 and thereafter prepared certain detailed plans and specifications for the work; nine prospective bidders, selected in accordance with certain criteria established by General Services, were invited to bid; a "prebid” meeting was held on November 17, 1976, at which time the format of the contract and general conditions were reviewed; eight prospective bidders attended the meeting and six submitted bids on November 24, 1976; respondent Alonzo, Inc., was the low bidder on the basis of a bid of costs plus $33,790 and was instructed to proceed with the work by telegram on November 26, 1976; the estimated cost of the project is $446,-000; on December 2, 1976 a written contract was executed by respondent Alonzo, Inc., and the contract was thereafter accepted by Correctional Services and approved by respondent commissioner, by the Attorney-General and by the Department of Audit and Control. As of December 28, 1976 the work at Otisville was 6% complete.
Obviously, there has been a failure on the part of the State to comply with the notice and public bidding requirements mandated by. statute. (Public Buildings Law, § 8, subds 2, 6; State Finance Law, § 144, subd 1.) However, respondents contend that the procedure used in awarding the contract here is a lawful exercise of the sovereign power to meet an emergency. (NY Const, art III, § 25; cf. General Municipal Law, § 103, subd 4.) The issue thus presented is whether the Department of Correctional Services was indeed confronted with a situation which may be denominated an emergency so as to excuse the State from compliance with statutes clearly designed to promote the public interest in competitive bidding.
In support of their position the respondents present certain statistics demonstrating a developing problem in prison overcrowding and potential dangers arising therefrom. It is noted that the inmate population under the supervision of Corree *281 tional Services rose from 15,667 to 17,513, an increase of 11.8% from September 30, 1975 to September 30, 1976. It is further noted that September, 1976 projections by Correctional Services show a shortage of space for 300 inmates by November 1, 1976, 2,292 by November 1, 1977 and substantially more thereafter unless additional capacity is added. In an affidavit submitted by a Deputy Commissioner of Correctional Services it is alleged that overcrowding was a partial cause of the Attica riot of 1971 and incidents at Great Meadow and Attica in August of 1976; it is further alleged that it was determined in September of 1976 that facilities at Otisville, Warwick, Hudson and McGregor could be acquired and opened to relieve the overcrowded situation in the prison system; therefore, a declaration of emergency was prepared and submitted to General Services, since, according to the deputy commissioner, "following normal design, bidding and construction procedures, nine to twelve months are required from the time a decision is made to construct or renovate before such work may actually commence.”
Although the State Finance Law does not deal with emergencies in the matter of State contracts, a reference to the General Municipal Law definition is helpful, since the underlying purpose of both statutes, insofar as they relate to bidding, is similar. An emergency must involve an accident or unforeseen occurrence requiring immediate action; it is unanticipated or fortuitous; it is a sudden or unexpected occasion for action and involves a pressing necessity. (General Municipal Law, § 103, subd 4; 40 NY Jur, Municipal Corporations, § 834; Grimm v City of Troy, 60 Misc 2d 579; Black’s Law Dictionary [4th ed], p 615.) The court is not persuaded that an emergency of the type necessary to excuse public bidding exists in the Department of Correctional Services. The overcrowding problem became obvious at Attica as far back as 1971. As early as January of 1976 the executive budget for the Department of Correctional Services noted the 1975-1976 increase in prison population and projected a 1,500 bed shortfall by March of 1977. Further, it appears from the affidavit of the deputy commissioner that the shortfall is not as serious as originally projected in the executive budget. The court has been furnished with the voluminous and detailed specifications used in connection with the closed bidding on the Otis-ville work. This is additional proof of the ability of the State officials involved to expedite the necessary work preliminary *282 to public bidding and to prepare the separate bidding categories required by section 135 of the State Finance Law. Respondent commissioner may not adopt a procedure contrary to the rules and standards of the public bidding statutes. (American Inst. for Imported Steel v Office of Gen. Servs., 47 AD2d 118, affd 38 NY2d 991.)
The contention by respondents that the petitioner has no standing to bring this proceeding is rejected. (State Finance Law, art 7-A; Empire Elec. Contrs. Assn. v Fabber, 71 Misc 2d 167; 8 Weinstein-Korn-Miller, NY Civ Prac, par 7802.01, n 2.)
Finally, it appearing that there was no fraud, collusion or wrongdoing on the part of respondent Alonzo, Inc., there should not be a total forfeiture but only a refund to the State of the amount, if any, representing the bargain lost by the award of the contract without competitive bidding, such damages to be determined at a hearing. (Elia Bldg. Co. v New York State Urban Dev. Corp., 54 AD2d 337.)