In the Matter of NEW YORK STATE ASSOCIATION OF PLUMB-
ING-HEATING-COOLING CONTRACTORS, INC., Appellant,
v JOHN C. EGAN, as Commissioner of General Services
of the State of New York, et al., Respondents.

Third Department, April 8, 1982

**APPEARANCES OF COUNSEL**

*McNamee, Lochner, Titus & Williams, P.C.* (*George F. Carpinello* of counsel), for appellant.

*Robert Abrams, Attorney-General* (*Richard J. Dorsey* and *Shirley Adelson Siegel* of counsel), for respondents.

*Harder, Silber & Gillen* (*George W. Harder* of counsel), for New York State Electrical Contractors Association, Inc., and others, *amici curiae*.

OPINION OF THE COURT

LEVINE, J.

The central issue presented on this appeal is whether the competitive bidding requirements of section 135 of the State Finance Law may be waived, in connection with two "single-bid" construction contracts for the expansion of State correctional facilities, by means of an executive department determination that at the time the contracts were awarded an emergency was presented by the overcrowded conditions in the State's prison system.

The facts upon which Special Term concluded that respondents had authority thus to depart from the statutory requirements of section 135 are not in dispute. On July 8, 1981, Governor Carey sent a message of necessity to the Legislature requesting immediate passage of an appropriation of $11,000,000 for the construction of additional inmate capacity at five correctional institutions. The need for this prison expansion was prompted by a condition of severe overcrowding, attributable to a sharp and substantial increase in the prison population of the State. The causes of this increase were: an intensified crime control campaign in New York City resulting in an increase of 21% in felony indictments in the city during the period December 29, 1980 to September 6, 1981, over comparable periods in the immediately preceding years; an increase of 5% in the rate of felony convictions and 2% in the rate of State prison sentences upon such convictions between the years 1977 and 1980; and the decision by the Office of Court Administration in March, 1981 to allocate substantial additional judicial manpower to the criminal parts of the New York City Supreme Court and thereby accelerate the processing of pending serious criminal cases. The Legislature promptly responded to the Governor's request and by July 10, 1981 enacted the proposed appropriation, which was signed into law July 31, 1981 (L 1981, ch 959). An additional impetus for prison expansion resulted from an order, granted July 29, 1981 by the United States District Court for the Southern District of New York (LASKER, J.), directing the Department of Correctional Services to take custody of 540 sentenced inmates awaiting prison reception at the Rikers Island House of Detention,

and to continue to take all State-ready inmates within 48 hours of the completion of processing. On September 17, 1981, the Office of General Services was first authorized by the Division of the Budget to undertake the design of the expansion contemplated at the Great Meadow and the Eastern Correctional facilities. Within two weeks thereafter, the Office of General Services completed the job specifications for the two projects in the form of unitary, general performance contracts rather than the descriptive plans and specifications, with separate specifications for plumbing, heating, and electrical wiring, as required under section 135 of the State Finance Law. On October 2, 1981, bids were solicited for single prime contracts at the Eastern and Great Meadow facilities. The bids were opened on October 21, 1981, and the contract at Great Meadow was awarded to Roger P. Kennedy, General Contractor, Inc., and at the Eastern Correctional Facility to Dominick Dan Alonzo, Inc.

We do not deprecate the seriousness of the problems faced by respondents regarding prison conditions in the fall of 1981. We hold, nevertheless, that respondents were without legal authority to depart from the requirements of separate, competitive bidding under section 135 of the State Finance Law in awarding the construction contracts at the Great Meadow and Eastern Correctional facilities.

The various provisions of State law mandating competitive bidding in the letting of public contracts (e.g., State Finance Law, §§ 135, 144, 174; General Municipal Law, §§ 101, 103) have been described as evincing "a strong public policy of fostering honest competition in order to obtain the best work or supplies at the lowest possible price. In addition, the obvious purpose of such statutes is to guard against favoritism, improvidence, extravagance, fraud and corruption" (*Jered Contr. Corp. v New York City Tr. Auth.*, 22 NY2d 187, 192-193). So strictly have the courts enforced this policy that the requirements of competitive bidding have been held to be "mandatory and jurisdictional and failure to abide by the statute renders a public works contract void and unenforceable" (*Elia Bldg. Co. v New York State Urban Dev. Corp.*, 54 AD2d 337, 344). The authority of the Office of General Services (OGS)

regarding competitive bidding requirements has been held to be "circumscribed by the language of this statute. OGS may not validly adopt a rule or standard which enlarges or alters the powers expressed therein" (*American Inst. for Imported Steel v Office of Gen. Servs. of State of N. Y.,* 47 AD2d 118, 119, affd 38 NY2d 991). A contractor who has performed work pursuant to a noncomplying contract may be denied recovery, either under its agreement or on the basis of *quantum meruit,* even when the unit of government has received the benefit of performance (*S. T. Grand, Inc. v City of New York,* 32 NY2d 300, 305; *Gerzof v Sweeney,* 22 NY2d 297). And the very basis invoked here for departing from the statutory requirements, an emergency in the conditions of the prison system, was advanced and rejected by the court in *Matter of General Bldg. Contrs. of N. Y. State v State of New York* (89 Misc 2d 279), a ruling from which the State chose not to seek appellate review.

No legislative intent to permit administrative waiver of the requirements of section 135 based upon an emergency may be implied. Responding to an unbroken tradition of judicial severity in enforcing the competitive bidding laws at all levels of government, the Legislature for the first time in 1955 authorized deviations by municipalities in cases of an emergency (L 1955, ch 434, present General Municipal Law, § 103, subd 4). No comparable exception relieving the State from competitive bidding has ever been enacted, and recent legislative proposals to effectuate that purpose have been rejected (see Assembly Bill Nos. 7528 [1979-1980 session]; 6432 [1981-1982 session]).

Certainly, no such power on the part of the executive branch may be implied from the emergency clause of the State Constitution (art III, § 25), as respondents suggest. The power is expressly legislative, not executive, and "refers only to the continuity of governmental operations in the direct sense. Obviously, it does not mean and may not mean that the Constitution is always suspended in every emergency in a world and life that is a succession of emergencies, natural and manmade" (*Flushing Nat. Bank v Municipal Assistance Corp. for City of N. Y.,* 40 NY2d 731, 740).

The danger in permitting administrative departure from statutory competitive bidding requirements for emergencies is perhaps best underscored by the disclosure in the record before us that since 1972, under its internal administrative procedures, the Office of General Services has let between 60 and 100 contracts a year, ranging in amounts to over $1,000,000 on a so-called "emergency" basis.

Special Term, therefore, erred in engrafting by implication any emergency exception to section 135 of the State Finance Law.

Even if such an exception were to be implied, akin to that expressly contained in subdivision 4 of section 103 of the General Municipal Law, the record fails to establish sufficient grounds for Special Term to have applied it here. An emergency has been defined as " '[a]n unforeseen combination of circumstances which calls for immediate action' " (*Lutzken v City of Rochester*, 7 AD2d 498, 500). It is "unanticipated or fortuitous; it is a sudden or unexpected occasion for action and involves a pressing necessity" (*Matter of General Bldg. Contrs. of N. Y. State v State of New York, supra,* p 281). Apart from the United States District Court's order of July 29, 1981 (which was clearly anticipatable), the events and conditions respondents claim constitute an emergency existed and were well recognized when the appropriation request was first submitted to the Legislature, at which time statutory relief from section 135 could also have been requested. Moreover, the exigencies of time were magnified by respondents' delay in commencing preparation of the plans and specifications for the projects until September 17, 1981, more than two months after funding had been approved. In short, respondents have demonstrated that a crisis existed arising out of the foreseen and foreseeable events and conditions existing in the fall of 1981, but not an emergency, as the term might appropriately be used in connection with State competitive bidding requirements.

In accordance with the foregoing, reversal of Special Term's judgment is required. A final question is presented, however, regarding the relief which may be granted. Because this proceeding was initiated before the bids were

opened and the contracts awarded, only the Commissioners of General Services and Correctional Services were named as party respondents. Petitioner's motion for a temporary injunction restraining respondents from opening and letting bids was denied. The answer subsequently served alleged, *inter alia,* the awarding of the contracts and raised as a defense that the two contractors receiving the awards were necessary parties. Petitioner then served an amended petition, adding the Comptroller as a party but not the contractors. Clearly, inasmuch as the petition seeks to have the contracts annulled, the contractors are necessary parties (CPLR 1001, subd [a]; see CPLR 7802, subd [d]; *Matter of General Bldg. Contrs. of N. Y. State v City of Syracuse,* 32 NY2d 780; *Matter of Utica Sheet Metal Corp. v County of Tompkins,* 40 AD2d 567). This prevents a final, binding adjudication concerning the validity of the contracts and determining the rights and obligations of interested parties (cf. *Elia Bldg. Co. v New York State Urban Dev. Corp., supra,* p 345; *Matter of General Bldg. Contrs. of N. Y. State v State of New York, supra,* p 282). Under *Matter of General Bldg. Contrs. of N. Y. State v City of Syracuse (supra,* p 781), we may convert this article 78 proceeding to a declaratory judgment and "content ourselves" with a declaration that the invocation of an emergency exception by respondents herein did not legally authorize them to waive the provisions of section 135 of the State Finance Law. A second alternative is also available, however. CPLR 1003 provides that in cases of defective joinder, "[p]arties may be added or dropped by the court, on motion of any party or on its own initiative, at any stage of the action and upon such terms as may be just". "Any stage" includes the joinder of a party, in the first instance, on appeal (*Matter of Lezette v Board of Educ.,* 35 NY2d 272, 282; *Rosenblatt v Birnbaum,* 20 AD2d 556, affd 16 NY2d 212). Respondents' brief advises that work under the contracts commenced October 29, 1981, and was expected to be completed by early February, 1982. Under these circumstances, we believe that joinder and remittal is the more appropriate procedure, since it will serve to expedite a final, complete resolution of this dispute and avoid a multiplicity of subsequent actions involving the claims of all interested parties.

The judgment should be reversed, on the law, with costs, petitioner directed to serve a supplemental summons upon Roger P. Kennedy, General Contractor, Inc., and Dominick Dan Alonzo, Inc., together with copies of all pleadings, within 20 days after entry and service of the order herein, and the matter remitted to Special Term for further proceedings not inconsistent herewith.

MAHONEY, P. J., SWEENEY, KANE and MAIN, JJ., concur.

Judgment reversed, on the law, with costs, petitioner directed to serve a supplemental summons upon Roger P. Kennedy, General Contractor, Inc., and Dominick Dan Alonzo, Inc., together with copies of all pleadings, within 20 days after entry and service of the order herein, and matter remitted to Special Term for further proceedings not inconsistent herewith.