STATE of Missouri ex inf. William L. WEBSTER, Attorney General of Missouri, ex rel. MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS, Plaintiff–Appellant,

v.

CITY OF CAMDENTON, a public body, Patterson and Associates, a Missouri corporation, Bachtel Builders, Inc., Rt. 1, Box 106F Linn Creek, Missouri 65052, Defendants–Respondents.

No. 16166.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 27, 1989.

William L. Webster, Atty. Gen., L. Timothy Wilson, Asst. Atty. Gen., Jefferson City, for plaintiff-appellant.

David T. Welch, Phillips, McElyea, Walker & Carpenter, P.C., Camdenton, for defendants-respondents.

MAUS, Judge.

Pursuant to a contract resulting from the acceptance of a bid, the City of Camdenton (Camdenton) sold Lots 3 and 6 in Block 3 of the Original Town of Camdenton for $60,000.00 to Patterson and Associates (Patterson). In general, the contract required Patterson to cause a firehouse/police station to be built on those lots and grant Camdenton a lease with an option to purchase the improved property. The Attorney General, on behalf of the Missouri Department of Labor and Industrial Relations, Division of Labor Standards, (Department), under the authority of § 290.335, filed a petition seeking to establish the construction of the building was subject to the Prevailing Wage Act. §§ 290.210 to 290.340. The circuit court denied relief. The Attorney General appeals.

The case was submitted to the circuit court on the petition, the attached affidavits and exhibits, and the suggestions of the parties. For the resolution of this appeal, that record may be supplemented by statements in the briefs and oral argument conceded to be true by the parties. *Consumer Contact Co. v. State, Dept. of Rev.*, 592 S.W.2d 782 (Mo. banc 1980); *Tittsworth v. Chaffin*, 741 S.W.2d 314 (Mo.App. 1987). The exhibits attached to the petition are a Notice to Bidders, an Agency Agreement, a Certificate as to Arbitrage, and a Lease/Purchase Agreement. It is not necessary to set forth those exhibits or even note the contents thereof in detail. The following is a succinct summary of relevant

terms of those documents necessary for the consideration of the issue to be decided.

The Notice to Bidders solicited bids

"for the construction and lease with option to purchase of a firehouse/police station on land presently owned by the City which land would be sold to the successful bidder for construction of the improvements as set forth in the plans, specifications and contract documents including, but not limited to, SALE AND LEASEBACK AGREEMENTS and LEASE on file at City Hall which are incorporated herein and made a part hereof."

Also, as stated, Lots 3 and 6, adjacent to the City Hall, were to be sold by Camdenton to the successful bidder for the sum of $60,000.00. The Notice further provided

"[t]he City would enter into a one year net lease to commence upon completion of the structure and acceptance by the City with four, five, or six one year options upon the same terms and conditions to be exercised by notice to the successful bidder not later than one month prior to the expiration of the initial term or any option term thereafter. Upon the expiration of the fourth option, the City shall have the option of purchasing title to the land and improvements, free and clear of all liens and encumbrances, for the sum of Ten and no/100 ($10.00) Dollars."

By the Agency Agreement, Patterson appointed Camdenton as "its agent to carry out all phases of the supervision and installation of the Equipment" described in the Lease/Purchase Agreement. The Agency Agreement further granted Camdenton the right, subject to Camdenton's payment of increased costs, to make changes in the description of the equipment.

The Certificate as to Arbitrage was not called for by the Notice to Bidders. Its purpose is not established by the record. It is obvious that it was intended to establish that interest paid to Patterson by Camdenton should not be subject to federal income taxation. In general, it requires that the "Equipment" be used for public use and for the expeditious completion of the project.

It is difficult to summarize the relevant terms of the Lease/Purchase Agreement as applicable to the construction of the building. The agreement is a printed form obviously intended to be used in respect to personal property to be purchased by a lessor from a vendor and leased to a lessee.

The equipment schedule attached to the form in question describes the equipment as a "combination firehouse and police station," constructed according to plans and specifications on file with Camdenton. The interpretation of the Lease/Purchase Agreement by this court in many respects is impossible as it refers to an attached "Payment Schedule". No such schedule is attached to the copy filed as an exhibit.

Blanks on the first page of the agreement have been completed to show the following. The Lessor is Patterson; the Lessee is Camdenton; and the Vendor is Bachtel Builders, Inc. (Bachtel). The term is seven years. The equipment cost is $276,455.00, and the rent is due annually in advance in the amount of $56,477.99. The term "Vendor" is defined to mean the entity from whom the Lessor "purchased or is purchasing the Equipment."

When that information is construed with the body of the printed form and the surrounding circumstances shown by the other attachments, the following is an outline of the major terms of the Lease/Purchase Agreement. Bachtel contracted with Patterson to build the firehouse and police station for $216,455.00. Patterson leases the property to Camdenton for seven years for an annual rental of $56,477.99. "The Original Term of this Agreement shall commence on the date hereof ...", which date is October 27, 1987. The obligation of Camdenton to pay the rent under the terms of the *net* lease is "absolute and unconditional in all events". Camdenton is required to maintain, insure and pay all taxes on "the Equipment". The seven year term of the lease is subject to the following.

"**Section 4.5. Continuation of Lease Term by Lessee.** Lessee intends to continue the Lease Term through the Origi-

nal Term and all of the Renewal Terms and to pay the Rent Payments hereunder. Lessee reasonably believes that legally available funds of an amount sufficient to make all Rental Payments during the Original Term and each of the Renewal Terms can be obtained. Lessee further intends to do all things lawfully within its power to obtain and maintain funds from which the Rental Payments may be made, including making provision for such payments to the extent necessary in each biannual or annual budget submitted and adopted in accordance with applicable provisions of state law, to have such portion of the budget approved, and to exhaust all available reviews and appeals in the event such portion of the budget is not approved.

"Section 4.6. Nonappropriation. Notwithstanding any other provision of this Agreement to the contrary, in the event sufficient funds shall not be appropriated or are not otherwise legally available by any means whatsoever for the payment of the Rental Payments required to be paid in the next occurring Renewal Term, then Lessee may terminate this Agreement at the end of the then current Original Term or Renewal Term, and Lessee shall not be obligated to make payment of the Rental Payments provided for in this Agreement beyond the then current Original or Renewal Term. Lessee agrees to deliver notice to Lessor of such termination at least ninety (90) days prior to the end of the then current Original or Renewal Term. ..."

Camdenton was granted the following option to purchase.

"ARTICLE IX: OPTION TO PURCHASE; TERMINATION OF LESSOR'S SECURITY INTEREST.

Provided there is no continuing default of Lessee hereunder, on any date that a Rental Payment is due as set forth in the Payment Schedule attached hereto and upon ninety (90) days prior written notice from Lessee to Lessor, Lessee shall have the right to purchase the Equipment and thereby terminate Lessor's security interest in the Equipment by paying to the Lessor on such date the Rental Payment due on such date together with the then applicant Purchase Price and all other amounts payable by Lessee hereunder. In such event title to the Equipment shall remain vested in Lessee."

None of the documents providing for the construction of the firehouse/police station made reference to the Prevailing Wage Act. Those documents are dated October 27, 1987. Construction soon commenced. The Department notified Camdenton that it determined the project was subject to the Act. Camdenton suspended construction. Camdenton's suggestions establish "the City informally requested a wage determination for the purpose of determining just exactly what was at steak [sic] although no indication was given to the Attorney General's office at any time that the City might consider voluntary compliance with the prevailing wage law." Camdenton determined the Act was not applicable. Construction resumed without regard for the Act.

The circuit court made no findings of fact or conclusions of law upon which it premised the judgment denying the application of the Prevailing Wage Act.

■ The basic argument of Camdenton is that under a literal reading of the controlling documents no workmen are employed by it or on its behalf. It reasons this is so because it is not obligated to purchase the "Equipment" and after the initial year it has the option to terminate the lease. It supports that argument by the statement "[t]he prevailing wage as determined by the Department of Labor and Industrial Relations is often double that of the actual prevailing rate in many out of state counties." For authority it cites *State ex rel. Ashcroft v. City of Sedalia*, 629 S.W.2d 578 (Mo.App. 1981).

The argument of Camdenton is unavailing. Camdenton's perception of what constitutes "the actual prevailing rate" may provide a motive to avoid the application of the Prevailing Wage Act. Otherwise, it provides no guide to a determination of whether or not workmen on the project in question are employees within the meaning of that Act.

A test to determine the applicability of the Act has been succinctly stated.

> "Section 290.220, RSMo 1978, clearly prescribes two criteria for determining whether the Prevailing Wage Act is applicable to the industrial development project involved in this appeal. One, the industrial development project must constitute a 'public works', and two, the industrial development project must involve 'workmen employed by or on behalf of ... [a] public body engaged in public works.'"

*State ex rel. Ashcroft v. City of Sedalia, supra,* 629 S.W.2d at 583 (omission in original).

The definition of "public works" is basically the following:

> "(7) **"Public works"** means all fixed works constructed for public use or benefit or paid for wholly or in part out of public funds. ..."

§ 290.210.

It is obvious the firehouse/police station is a "public works". The construction is for public use or benefit. If the Lease/Purchase Agreement is in effect for only the mandatory initial term of one year, the firehouse/police station has been paid for "in part out of public funds" by Camdenton's initial payment of $56,477.99. The project meets the first criterion for determining the applicability of the Act. Camdenton does not really contend otherwise.

However, Camdenton does contend the project does not meet the second criterion because the workmen on the project are employed by Bachtel under contract with and on behalf of Patterson.

The application of the Act is not limited to a project on which the workmen are employed directly by a public body. It is sufficient if such workmen are employed by a separate entity to construct an improvement for a public body. The Act is applicable when a public body enters into a contract with a general contractor for the construction of a public works. Camdenton concedes this to be true. But, as stated, Camdenton reasons the Act is not applicable to the firehouse/police station project because the workmen are employed by Bachtel under contract with Patterson for construction on land owned by Patterson, and Camdenton has an option to terminate the Lease/Purchase Agreement after one year.

To hold that this carefully constructed legal facade insulates the construction of the firehouse/police station from the Prevailing Wage Act would be to place form over substance. The building was to be built according to the plans and specifications of Camdenton. Camdenton retained the right to change those plans and specifications. Camdenton was also granted the power to supervise the construction. Camdenton suspended construction and the City, not Patterson or Bachtel, determined the Act was not applicable. Inherent in the design of the building and its location is a compelling inference that it is to be used by Camdenton. By the terms of the relevant documents, "[t]he Equipment will be used in furtherance of the public purposes of the Lessee."

Camdenton has conveyed real estate valued at $60,000.00 to Patterson. Even if the building is never occupied by Camdenton, it must pay Patterson the sum of $56,477.99. The "Certificate as to Arbitrage" contains the following statement.

> "1. The Agreement is being issued by the Lessee under and pursuant to law for the purpose of financing the acquisition of certain equipment (the 'Equipment') described in Exhibit C to the Agreement."

Significantly, the Lease/Purchase Agreement contains the following provision.

> **"Section 4.3. Interest and Principal Components.** A portion of each Rental Payment is paid as, and represents payment of, interest, and the balance of each Rental Payment is paid as, and represents payment of, principal all as set forth on the Payment Schedule attached hereto."

By its brief and in oral argument, Camdenton admits the various documents constitute "a financing device" to provide for the construction of the firehouse/police station. The relevant provisions of the documents

and this admission irrefutably establish that Patterson was financing the construction of the firehouse/police station for Camdenton and that the workmen on the project were employed on behalf of Camdenton.

As stated, Camdenton seeks to avoid that conclusion because it has an option to terminate the Lease/Purchase Agreement after one year. Camdenton relies upon cases holding that a municipal corporation does not violate constitutional debt limitations if the City is not unconditionally bound to pay beyond those limitations.

This opinion is not to be construed as holding the arrangement embodied in the relevant documents would not violate those constitutional debt limitations. See Annots., Municipal Debt Limit–Evasion, 71 A.L.R. 1318 (1931); Municipal Debt Limit–Evasion–Lease, 145 A.L.R. 1362 (1943). This issue is not before the court. In some cases in this state that issue has been decided by narrowly defining the term "debt" to mean an unconditional obligation to pay from tax revenues. However, cases such as *Knowlton v. Ripley County Memorial Hosp.*, 743 S.W.2d 132 (Mo.App. 1988) and *St. Charles City–County Library District v. St. Charles Library Building Corp.*, 627 S.W.2d 64 (Mo.App. 1981) are inapposite to the issue presented. The applicability of the Act is to be decided upon a determination of what is to be accomplished. A city may not do indirectly that which it cannot do directly. *Sager v. City of Stanberry*, 336 Mo. 213, 78 S.W.2d 431 (1934). This court readily concludes the workmen on the project are in reality employed on behalf of Camdenton. Camdenton's legal right to forfeit a consideration of $116,477.99 invested in a firehouse/police station valued at $276,455.00 does not alter that reality. Cf. *Empire Electrical Contractors Ass'n v. Fabber*, 71 Misc.2d 167, 335 N.Y.S.2d 540 (N.Y.Sup. 1972). To hold otherwise would lend judicial approval to an easy method of nullifying the Act.

*State ex rel. Ashcroft v. City of Sedalia*, *supra*, cited by Camdenton, does not hold otherwise. In that case, Sedalia issued its revenue bonds to finance an industrial facility for Gardner–Denver Company. Under customary revenue bond documents, Sedalia contracted for the construction of the facility and granted Gardner–Denver authority to supervise construction. Sedalia was to lease the facility for a term of years to Gardner–Denver with an option to purchase at the end of the term of the lease for a nominal consideration. The net rental payments were to be sufficient to retire the revenue bonds. The court held that under such an arrangement the workmen on the project were not employed " 'by or on behalf' " of Sedalia. It was found the function of Sedalia was to finance or "sponsor" the construction on behalf of Gardner–Denver. That is the antithesis of the factual situation presented by this case. In this case, Patterson is financing the construction on behalf of Camdenton. Within the meaning of the Prevailing Wage Act, the workmen on the project are employed on behalf of Camdenton.

From information before the court, it is established the firehouse/police station has been completed without compliance with the Act before the submission of this appeal. It has been suggested the appeal has become moot. This is not the case. It was the duty of the Attorney General to judicially establish the Prevailing Wage Act was applicable to the project and enforce compliance with that Act by injunctive relief. § 290.335. The fact the circuit court erroneously denied that relief does not terminate the action. Either party to the action by § 290.335 is expressly granted the right of appeal. The right of the Attorney General to appeal carries with it the authority to seek a determination the Act was applicable to the project and other relief appropriate to enforce the Act. An appellate court has wide discretion in fashioning relief upon a determination injunctive relief has been erroneously denied. 42 Am. Jur.2d, Injunctions, § 357.

The Attorney General seeks such a determination. He also asks the case be remanded for further relief to enforce the Act, presumably recovery on behalf of workmen on the project. It is appropriate for this court to adjudge that the Act is applicable. However, in contradiction to

**318**

the Davis–Bacon Act, 40 U.S.C.A. § 276a et seq., the Prevailing Wage Act provides for recovery by covered workmen.

"Any workman employed by the contractor or by any subcontractor under the contractor who shall be paid for his services in a sum less than the stipulated rates for work done under the contract, shall have a right of action for double whatever difference there may be between the amount so paid and the rates provided by the contract together with a reasonable attorney's fee to be determined by the court, and an action brought to recover same shall be deemed to be a suit for wages, and any and all judgments entered therein shall have the same force and effect as other judgments for wages."

§ 290.300. In the circumstances of this case, the term "stipulated rates" must be construed to mean the applicable prevailing wages as determined by the Department. As stated, Camdenton did obtain a schedule of prevailing rates applicable to the project. It did not seek review of those rates and the Department's determination is final. § 290.260.

It need not be decided if § 290.335 authorizes the Attorney General to seek recovery in the nature of a *parens patriae* action on behalf of workmen to recover wages due under the Act. Cf. *Clark Oil & Refining Corp. v. Ashcroft*, 639 S.W.2d 594 (Mo. banc 1982); *State ex rel. Barker v. Chicago & A. R. Co.*, 265 Mo. 646, 178 S.W. 129 (banc 1915). Also see Annot., Excessive Freight Charges—Who May Recover, 13 A.L.R. 289 (1921). Such recovery would be a money judgment. This court, in the exercise of its discretion, determines that even if such a *parens patriae* recovery is available, the recovery of wages due under the Act should be left to voluntary payment by the employer or an action by the workmen.

However, § 290.265 requires that a statement of the prevailing wages be posted at the project site. It obviously was not. The workmen covered by the Act may be unaware of the applicability of the Act and the prevailing wages. It is therefore ap-

propriate that the respondents give each person employed in connection with the project notice of the applicability of the Act and the prevailing wages. Such notice should be given in person or by certified mail with return receipt requested, directed to such person's last known address. The failure to post the mandatory notice may, under the provisions of § 516.280, toll the statute of limitations. See *Hasenyager v. Bd. of Police Com'rs of Kansas City*, 606 S.W.2d 468 (Mo.App. 1980).

It is the duty of this court to "dispose finally of the case." Rule 84.14. The relief granted should be fashioned to carry out the legislatively declared public policy and, so far as practicable, enforce the Act. Therefore, the judgment of the trial court is reversed and the following judgment is given. The Prevailing Wage Act, §§ 290.-210 to 290.340, was applicable to the construction of the firehouse/police station. The prevailing wages heretofore determined by the Department, at the request of Camdenton as aforesaid, insofar as they are available and provide for the covered workmen, are the "stipulated rates" for the project. To the extent such determination is not available, or to the extent it does not cover all employees on the project, the Department shall determine the applicable prevailing wages as provided by the Act. The respondents shall give the aforesaid notice. The costs of the action are taxed against the defendants-respondents.

FLANIGAN, P.J., concurs.

PREWITT, J., concurs.